Revised August 24, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 96-30316

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

MERRICK D. MYERS,
also known as Merrick Myers,

Defendant - Appellant

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

August 6, 1998

Before POLITZ, Chief Judge, and DAVIS and DUHÉ, Circuit Judges.

JOHN M. DUHÉ, JR., Circuit Judge:

In this case we address whether a district court's failure to comply with FED.R.CRIM.P. 32(c)(3)(C), which requires the court during sentencing to address the defendant personally and to determine whether the defendant has any statement to make or information to present in mitigation of his sentence, is amenable to a harmless error analysis. We find that it is not, and we therefore reverse and remand for resentencing.

## BACKGROUND

Merrick Myers ("Myers") pled guilty to conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. Myers's Presentence Report indicated that he cooked powder cocaine into crack for his brother and arranged and conducted drug transactions at a New Orleans apartment in March and April, 1995. When FBI agents searched that apartment on May 1, 1995, they found a loaded semi-automatic rifle under Myers's bed.

In connection with his guilty plea, Myers "expressly waiv[ed] the right to appeal his sentence on any ground," subject to narrowly specified exceptions. At the plea hearing on August 10, 1995, the district court asked Myers whether he had entered into any plea agreement with the government. Myers stated that he had not; then he stated that he had. Myers then reviewed the plea agreement and confirmed that it represented his bargain with the government. Notwithstanding the appeal waiver contained in the plea agreement, however, at the sentencing hearing on March 20, 1996, the district judge asked Myers: "[D]o you understand you have the right to *appeal the sentence* I'm about to impose?" (Emphasis added). Myers responded that he did.[1]

---

[1]Perhaps skeptical of the validity of Myers's appeal waiver, the government has specifically waived any reliance on it here. See, e.g., U.S. v. Baty, 980 F.2d 977, 979 (5th Cir. 1992)("[A] defendant's waiver of her right to appeal deserves and, indeed, requires the special attention of the district court."). We thus need not decide whether Myers's instant appeal would fall within the scope of the waiver.

Based on the amount of crack involved (17 grams), Myers's base offense level was 26.  U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G."), § 2D1.1(c)(1995).  Myers received a two-level increase because he had possessed a firearm during the drug-trafficking conspiracy (see U.S.S.G. § 2D1.1(b)(1)), but also received a three-level decrease for acceptance of responsibility (see U.S.S.G. § 3E1.1(a) and (b)), making his total offense level 25.  Myers had no criminal history points, placing him in criminal history category I and establishing a sentencing range of 57 to 71 months.  See U.S.S.G. Chapter 5, Pt. A (Sentencing Table).  Myers's offense, however, carried a statutory minimum sentence of 5 years.  21 U.S.C. §§ 846 and 841(a)(1).

Prior to sentencing, the government moved for a downward departure in Myers's sentence, pursuant to U.S.S.G. § 5K1.1.  The court denied the motion with the following strong language:

> ... I am not granting the [5K] motions, because I think the recommendations by the U.S. Attorney's Office to put dangerous drug dealers back into our community after serving reduced sentences are a disgrace to the judicial system.  I think it's a serious problem in this case.  This is a very serious group of drug dealers.
> * * * * *
>
> Because your participation in this drug dealing has ruined your community and it is ruining our city and it must stop, and the only way to stop it is to put the drug dealers in jail.  That's what we're doing.  All right?  And you can help us do that, and you've helped to some extent, and if you continue to help, then maybe the community will be saved.

3

> But, at this point I'm not honoring the 5K reductions, which were grossly disproportionate and I think a disgrace.

The court went on to overrule Myers's objections to the two-level enhancement for possession of a firearm and to deny his request for a two-level decrease for being a "minor player" in the conspiracy. See U.S.S.G. § 3B1.2. Finally, the court ruled that Myers could not benefit from the "safety valve" provision of U.S.S.G. § 5C1.2, because Myers had "possess[ed] a firearm ... in connection with the offense." See U.S.S.G. § 5C1.2(2). The court then sentenced Myers to the statutory minimum of 5 years.

## DISCUSSION

### I.

Rule 32(c)(3)(C) of the Federal Rules of Criminal Procedure states that the court *must*, before imposing sentence,

> address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence.

FED.R.CRIM.P. 32(c)(3)(C)(West 1998). Myers contends he was denied this statutory right to speak "in mitigation of the sentence," and, furthermore, that such an error is not harmless and necessitates remand. Myers posits that, had he been allowed to speak on his own behalf, he "may have been able to persuade the court" either to grant the government's § 5K1.1 motion or to change its mind regarding the firearm enhancement.

### A.

4

Initially, we must decide whether Myers was, in fact, denied the so-called "right of allocution" secured him by Rule 32.  We review *de novo* whether a district court complied with a Federal Rule of Criminal Procedure.  U.S. v. Scott, 987 F.2d 261, 264 (5th Cir. 1993).  The government contends that Myers was indeed afforded his allocution rights because (1) the court invited Myers to explain why the firearm enhancement should not apply, and (2) *through defense counsel*, Myers was able to argue that he had cooperated with the government and that he was a minor participant in the conspiracy.  Further, the government contends that a remand is, in any case, not warranted since Myers received the lowest sentence possible.  We reject the government's arguments as meritless.

First, we observe that thirty-seven years ago the Supreme Court, in Green v. United States, 365 U.S. 301 (1961), rejected the argument that a defendant's right of allocution may be satisfied through his counsel.  In Green the Court stated:

> The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.  We are buttressed in this conclusion by the fact that the Rule explicitly affords the defendant two rights:  "to make a statement on his own behalf," and "to present any information in mitigation of his sentence."  We therefore reject the Government's contention that merely affording defendant's counsel the opportunity

5

to speak fulfills the dual role of Rule 32(a).[2] _Green_, 365 U.S. at 304. As the Supreme Court recognized, Rule 32 envisions a *personal* colloquy between the sentencing judge and the defendant. See _U.S. v. Anderson_, 987 F.2d 251, 261 (5th Cir. 1993); _U.S. v. Dominguez-Hernandez_, 934 F.2d 598, 599 (5th Cir. 1991). The arguments of Myers's counsel therefore did not satisfy Rule 32.

Second, the court's two questions to Myers regarding the firearm enhancement were patently inadequate to meet the plain requirements of Rule 32. By its own terms, Rule 32 mandates that a defendant be given the opportunity "to make a statement and [] present *any information* in mitigation of sentence." FED.R.CRIM.P. 32(c)(3)(C)(emphasis added). The court questioned Myers merely to confirm that there was a factual basis for the firearm enhancement. Those inquiries were not even an arguable attempt to give Myers the broad-ranging opportunity to speak embodied in Rule 32. See, e.g., _U.S. v. Sparrow_, 673 F.2d 862, 864 (5th Cir. 1982); see also, _U.S. v. De Alba Pagan_, 33 F.3d 125, 129 (1st Cir. 1994).[3]

---

[2]The substance of present Rule 32(c)(3)(C) appeared in FED.R.CRIM.P. 32(a)(1)(C) prior to amendment by Pub.L. 98-473, eff. Nov. 1, 1987. See FED.R.CRIM.P. 32 (West 1998)(Rule Applicable to Offenses Committed Prior to Nov. 1, 1987).

[3]To comply with Rule 32, "it is not enough that the sentencing court addresses a defendant on a particular issue, affords counsel the right to speak, or hears the defendant's specific objections to the presentence report." _De Alba Pagan_, 33 F.3d at 129, citing, *inter alia*, _U.S. v. Posner_, 868 F.2d 720, 724 (5th Cir. 1989)(other citations omitted).

We also reject the government's assertion that, because Myers received the lowest sentence possible, a remand for resentencing would be a useless act. We pretermit discussion of that issue, however, until the next section. See discussion infra Part I.B.

In sum, in order to satisfy the command of Rule 32(c)(3)(C),

> the court, the prosecutor, and the defendant must at the very least interact in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence.

De Alba Pagan, 33 F.3d at 129, citing Green, 365 U.S. at 304-05. Buttressed by our own independent review of the record, we reject the government's claim that Myers was afforded his Rule 32 right of allocution.

B.

We now must turn to a question left undecided[4] by the Supreme

---

[4]The Court, by a 5 to 4 majority, held that Green had, in fact, been afforded his right of allocution. Green, 365 U.S. at 305. Justice Stewart concurred in the judgment of the Court, but believed that Rule 32(a) did not "clearly ... require a district judge in every case to volunteer to the defendant an opportunity personally to make a statement, when the defendant has a lawyer at his side who speaks fully on his behalf." Green, 365 U.S. at 306 (Stewart, J., concurring). It bears noting, however, that Justice Stewart was the only member of the Green Court who read Rule 32(a) thus. The eight other Justices all read Rule 32(a) as *commanding* a district judge to give a defendant an opportunity to speak personally in mitigation of his sentence. See Green, 365 U.S. at 304 (Harlan, J., joined by Frankfurter, Clark & Whittaker, JJ.), and 365 U.S. at 307 (Black, J., joined by Warren, C.J., and Douglas & Brennan, JJ., dissenting). The four dissenting Justices concluded, contrary to the majority, that Green had not been adequately afforded his Rule 32(a) rights. See Green, 365 U.S. at 307-08 (Black, J., dissenting).

7

Court in <u>Green</u>: whether denial of a defendant's Rule 32 right of allocution requires an automatic reversal and remand for resentencing, or whether such an error can be deemed "harmless" if the record shows that, regardless what the defendant might have said in his own behalf, the court would not have imposed a lower sentence. The government implicitly[5] contends that a harmless error analysis should apply when it urges that "remand is not warranted because there is no possibility that a lower sentence would have been imposed by the district court." Citing our decision in <u>Dominguez-Hernandez</u>, the government maintains that remanding Myers's case for resentencing would therefore be a "useless bow to procedural nicety." <u>Dominguez-Hernandez</u>, 934 F.2d at 599.

The government misconstrues <u>Dominguez-Hernandez</u>, a case that, we must observe, entirely refutes the government's position. In

---

[5]The government consistently maintains that Myers was in fact afforded his allocution rights. At no time does the government explicitly offer the alternative argument that, if Myers *had been* denied allocution, then the error would in any case have been harmless and a remand unnecessary. Confusingly, however, the government goes on to argue that a remand would be useless because Myers already received the lowest sentence possible. That argument makes sense only if we *assume* that Myers was not given the opportunity to speak in mitigation of sentence. Further clouding its argument, the government then cites us to two cases, <u>U.S. v. Cole</u>, 27 F.3d 996, 998-99 (4th Cir. 1994), and <u>U.S. v. Dominguez-Hernandez</u>, 934 F.2d 598, 599 (5th Cir. 1991), in which the defendants *were* denied their allocution rights. In sum, because of the internal inconsistency in the government's presentation of its argument, we are constrained to say that the government "implicitly" advocates a harmless error approach to the Rule 32 error.

Dominguez-Hernandez, we reaffirmed the settled principle that "[i]f the district court fails to provide the [Rule 32] right of allocution, *resentencing is required*." Dominguez-Hernandez, 934 F.2d at 599, citing U.S. v. Posner, 868 F.2d 720, 724 (5th Cir. 1989)(emphasis added). We remanded for resentencing even though the defendant (1) had not raised the error to the district court, and (2) did not even assert that, on resentencing, he wished to exercise his right of allocution. Dominguez-Hernandez, 934 F.2d at 599. It was in view of the latter point in particular that we observed remand could "well be a useless bow to procedural nicety." Id. Nonetheless, we found that failure to afford the defendant his allocution rights *necessitated* remand; our precedents dictated, and continue to dictate, such a result. See, e.g., U.S. v. Anderson, 987 F.2d 251, 261 (5th Cir. 1993); U.S. v. Sparrow, 673 F.2d 862, 864-65 (5th Cir. 1982).

Because it is apposite to Myers's case, we add that a remand is necessary even when the judge's comments, at the sentencing hearing or elsewhere, indicate that the judge would remain unmoved in the face of *anything* the defendant has to say. See Sparrow, 673 F.2d at 865.[6] The right of allocution embodied in Rule 32 does not exist merely to give a convicted defendant one last-ditch

---

[6]"Even if what Sparrow intended to say would not influence the judge, under Rule 32 the District Court is required to address the defendant personally, an obligation that it failed to comply with in this case." Id.

opportunity to throw himself on the mercy of the court. To be sure, one important function of allocution is "to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances." De Alba Pagan, 33 F.3d at 129. But the practice of allowing a defendant to speak before sentencing, which dates back as far as 1689 to the case of Anonymous, 3 Mod. 265, 266, 87 Eng.Rep. 175 (K.B. 1689), has symbolic, in addition to functional, aspects. As a sister Circuit has observed, "[a]ncient in law, allocution is both a rite and a right. ...[A]llocution has value in terms of maximizing the perceived equity of the [sentencing] process." De Alba Pagan, 33 F.3d at 129 (citations and internal quotes omitted). The right of allocution, then, is one "deeply embedded in our jurisprudence"; both its longevity and its symbolic role in the sentencing process counsel against application of a harmless error analysis in the event of its denial. Id.

Myers's case illustrates why a remand would vindicate the "perceived equity" of the proceedings and ensure that his sentencing reflects his individual circumstances. The government itself made a § 5K1.1 motion on Myers's behalf, urging the court to depart below the statutory minimum sentence,[7] on the grounds that

---

[7]Thus, this case does not, as the government contends, present the situation where Myers has received the "lowest sentence possible." The court, in its discretion, could have granted the § 5K1.1 motion and departed beneath the statutory minimum. See U.S.S.G. § 5K1.1, comment. (n.1) ("[S]ubstantial assistance in the investigation or prosecution of another person who has committed an

10

Myers had played a minor role in the drug conspiracy and that he had provided substantial assistance in its prosecution. At oral argument, counsel for the government admitted that such motions were not frequent and were usually honored by sentencing courts. All that notwithstanding, the sentencing court harshly rebuked the government for requesting a downward departure and refused to honor its § 5K1.1 motion.

The district court was well within its discretion in rejecting the § 5K1.1 motion and also, as we will below demonstrate, in subjecting Myers to the firearm enhancement. See discussion infra Part II. All we say, however, is that Myers should have been invited to speak freely in his own behalf prior to sentencing. A hypothetical observer to the proceedings, then, would have been left with no doubt that Myers's sentence reflected the sentencing court's considered judgment about the gravity of *his individual* participation in the drug conspiracy. Such benefits, although perhaps intangible, could have been bought at the relatively cheap cost of complying with the simple, clear language of Rule 32(c)(3)(C).[8] As we have already observed, the burden of such

offense may justify a sentence *below a statutorily required minimum sentence*.")(emphasis added).

[8]The treatment of the Rule 11 plea colloquy by the Rules of Criminal Procedure sheds some light on the question before us. Rule 11(h) explicitly applies harmless error analysis to *any* error in the Rule 11 colloquy See FED.R.CRIM.P. 11(h)(eff. Aug. 1, 1983). Before its extensive revision in 1975, Rule 11 "required only a brief procedure during which the chances of a minor, insignificant

compliance falls upon the sentencing court, and not upon the convicted defendant.  See Dominguez-Hernandez, 934 F.2d at 599.

---

and inadvertent deviation were relatively slight."  FED.R.CRIM.P. 11 advisory committee notes (1983 Amendment).  Thus, the Supreme Court held, in McCarthy v. U.S., 394 U.S. 459, 471 (1969), that "prejudice inheres in a failure to comply with Rule 11" -- i.e., that a Rule 11 error could never be harmless error.

But given the "more elaborate and lengthy procedures" under the post-1975 Rule 11, the advisory committee believed that "the chances of a *truly* harmless error ... are much greater under present Rule 11 than under the version before the Court in McCarthy."  FED.R.CRIM.P. 11 advisory committee notes (1983 amendment).  Rule 11(h) was inserted in 1983 to make explicit that "[a]ny variance from the procedures required by [Rule 11] which does not affect substantial rights shall be disregarded." FED.R.CRIM.P. 11(h);  see also  U.S. v. Johnson, 1 F.3d 296, 302 (5th Cir. 1993)(en banc).

The present Rule 11 colloquy, then, involves relatively complex and carefully delineated procedures.  Rule 32 allocution, by contrast, simply requires a sentencing court to communicate unequivocally to a defendant that he has the right to speak in his behalf on any subject he wishes.  As discussed above, it was the complexity of the amended Rule 11 procedures which led the advisory committee to apply harmless error analysis to all Rule 11 errors. While the 1983 addition of Rule 11(h) does not conclusively establish that a Rule 32 error is never "harmless," the difference in complexity between Rule 11 and Rule 32 procedures certainly points in that direction.

The Rule 11 plea colloquy also serves a different purpose than the Rule 32 right of allocution.  The safeguards of Rule 11 are designed to ensure that a defendant who pleads guilty (1) has not been coerced into doing so, (2) understands the nature of the charges, and (3) understands the consequences of his plea.  See Johnson, 1 F.3d at 300.  The Rule 32 right of allocution, by contrast, is not concerned with the voluntariness of a defendant's plea; instead, as we have discussed above, the law allows a defendant to speak personally before sentencing to encourage a court to tailor sentences to individual circumstances and also to increase the "perceived equity" of the sentencing process.  See De Alba Pagan, 33 F.3d at 129.

We thus believe our *en banc* decision in Johnson, supra, (where we recognized that *all* Rule 11 errors -- even those implicating so-called "core concerns" -- were subject to harmless error analysis) does not in any way call into question Sparrow or Dominguez-Hernandez, supra.

12

We recognize that our holding today puts us at odds with some of our sister Circuits. For example, the Fourth, Sixth and Ninth Circuits apply some variation of harmless error analysis to the denial of a defendant's Rule 32 allocution rights. See, e.g., U.S. v. Cole, 27 F.3d 996, 999 (4th Cir. 1994); U.S. v. Riascos-Suarez, 73 F.3d 616, 627 (6th Cir.), cert. denied, 117 S.Ct 136 (1996); U.S. v. Leasure, 122 F.3d 837, 840 (9th Cir. 1997), cert. denied, 118 S.Ct. 731 (1998) . On the other hand, the First Circuit, in De Alba Pagan, supra, squarely held that such an error could not be harmless. De Alba Pagan, 33 F.3d at 129; see also U.S. v. Patterson, 128 F.3d 1259, 1261 (8th Cir. 1997), citing U.S. v. Walker, 896 F.2d 295, 301 (8th Cir. 1990).

As is evident from our opinion here, we believe the First Circuit's approach to be more prudent. Besides vindicating the policy concerns embodied in Rule 32(c)(3)(C), see supra, we also note that a bright-line rule requiring remand will help to avoid speculative exercises like the one performed by the Fourth Circuit in Cole, supra. There, in determining that the district court's denial of Cole's right of allocution affected his "substantial rights," a panel of the Fourth Circuit hypothesized that Cole "may have been able to persuade the court that he was accountable for less than the 6 grams of crack" attributable to him. Cole, 27 F.3d at 999. While the appellate court may have accurately forecasted Cole's persuasiveness had he been able to plead his own cause at sentencing, we prefer a rule which forecloses such chancy

13

inquiries.  We recognize that our Circuit's rule will require the occasional "vain and useless" act wherein a defendant is allowed, on remand, to speak in his own behalf, only to receive an identical sentence.  We believe, however, that the benefits gained from such an approach outweigh the costs -- costs that, we note in closing, can be avoided by vigilant compliance with Rule 32.

## II.

As stated above, Myers received a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in the course of the drug conspiracy.  During the execution of a search warrant on Myers's residence, police found a loaded semi-automatic rifle under Myers's bed.  Myers objected to the firearm enhancement because he maintained he "had no knowledge of it being there."  The court heard Myers's objections but applied the enhancement anyway, without making an explicit "finding" regarding Myers's possession of or knowledge about the rifle.[9]  On appeal, Myers contends the court erred by not making a specific factual finding, for example, that Myers possessed the gun during the conspiracy and knew it was under his bed.  Since the error Myers complains of again regards

---

[9]Regarding paragraph 44 of the PSR (the firearm enhancement), the court only stated that it "adopt[ed] the remainder of the probation officer's recommendations as undisputed," and, further, that "a two level enhancement for possession of a firearm is appropriate and that the Defendant is not entitled to the safety valve under Guideline [§] 5C1.2(2)."

14

the application of FED.R.CRIM.P. 32,[10] our review is *de novo*. Scott, 987 F.2d at 264.

We reject Myers's argument. The district court's adoption of paragraph 44 of the PSR was an implicit finding that Myers knew about, and possessed, the rifle in the course of the conspiracy. That part of the PSR referred to by the court provides us with a sufficiently clear factual basis for the firearm enhancement. See U.S. v. Carreon, 11 F.3d 1225, 1231 (5th Cir. 1994). We therefore affirm the two-level firearm enhancement and necessarily affirm the district court's finding that Myers was not eligible for the "safety valve" provision of U.S.S.G. § 5C1.2(2).[11]

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's application of the firearm enhancement, but we VACATE Myers's sentence because of the district court's failure to accord Myers his Rule 32 right of allocution. We must therefore REMAND FOR RESENTENCING.

AFFIRMED IN PART; VACATED IN PART AND REMANDED FOR

---

[10]"For each matter controverted [at sentencing], the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." FED.R.CRIM.P. 32(c)(1).

[11]Section 5C1.2(2) permits sentencing without regard to statutory minima for certain offenses if the defendant meets five criteria, one of which is that "the defendant did not ... possess a firearm or other dangerous weapon ... in connection with the offense." U.S.S.G. § 5C1.2(2).

RESENTENCING.


ENDRECORD

DAVIS, J. (specially concurring).

I agree with my colleagues that our precedents require us to remand this case for resentencing because the Defendant was denied his right to allocution before his sentence was imposed.  Our cases require a remand in this circumstance without regard to whether the Defendant suffered prejudice.  I write separately to observe that in reaching this result, our decisions have completely ignored Rule 52 of the Rules of Criminal Procedure.  Rule 52 states:

> **(a)** **Harmless Error.**  Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

> **(b)** **Plain Error.**  Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

FED. R. CRIM. P. 52.

### Rule 52(a)

Under Rule 52(a), the government bears the burden of persuasion to demonstrate that the court's failure to allow allocution was harmless error.  U.S. v. Olano, 507 U.S. 725, 727–729 (1993).

As my colleagues point out, it is theoretically possible that the Defendant could have persuaded the judge to give him a reduction in sentence for his cooperation pursuant to the government's § 5K1.1 motion.  However, the judge considered counsel's argument on this issue and adamantly refused to grant

17

this reduction.  In addition, the Defendant gives us no insight into what he would have told the judge to change her mind.  In light of the judge's strong feelings on the subject, I believe that the likelihood that the Defendant could have persuaded the district court to grant him a § 5K1.1 reduction is extremely remote.  In the absence of some concrete information that Myers planned to provide the judge to change her mind on the 5K1.1 reduction, I would conclude that the  failure to grant allocution was harmless error.

We need not rely on the harmless error standard of Rule 52(a), however, because the plain error standard we are required to apply under Rule 52(b) presents a much more compelling case for refusing the remand.

### Rule 52(b)

Neither Myers nor his attorney raised any objection in the trial court to the district court's denial of his right of allocution.  In this day of longer, more complex sentencing proceedings and extended exchanges between the court, counsel and the Defendant, it is easier for a court to overlook allocution. Rule 52, wisely in my view, requires us to review this unpreserved error under the lens of plain error.  As my colleagues note, some of our cases may be read to exempt the right to allocution from the strictures of Rule 52(b).  I see no principled legal basis on which these decisions can be supported.

The Supreme Court in <u>Arizona v. Fulminante</u>, 499 U.S. 279, 306-07 (1991), recognized that Rule 52 applies to a number of errors

18

involving the denial of constitutional and statutory rights that most would agree are more important than a defendant's right to allocution. These errors include issuing an erroneous jury instruction; misstating an element of the offense; erroneously excluding a defendant's testimony about the circumstances of his confession; unconstitutionally commenting on the defendant's silence at trial; failing to instruct the jury on the presumption of innocence; admitting evidence obtained in violation of the Fourth Amendment; and unconstitutionally denying counsel at a preliminary hearing. See Hill v. United States, 368 U.S. 424, 428 (1962), in which the Court in a habeas case held that denial of defendant's right to allocution does not violate a right sufficiently substanial or fundamental to be cognizable in habeas.

In U.S. v. Olano, 113 S. Ct. 1770 (1993), the Supreme Court set forth a four-prong test for determining whether errors to which no objection is made can nevertheless serve as grounds for appellate reversal. Under Olano, reversal is not required unless there is: (1) clear error; (2) that is clear or plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. Id. 113 S. Ct. at 1779. Assuming that the district court committed error, there is no basis to conclude that Myers' substantial rights were affected.

In Olano, the Supreme Court held that the requirement that substantial rights be affected "in most cases . . . means that the

19

error must have been prejudicial: it must have affected the outcome of the district court proceedings." Id., 113 S. Ct. 1778. In demonstrating prejudice "it is the defendant rather than the government who bears the burden of persuasion with respect to the prejudice." Id.

Myers makes no claim, nor could he, that he has met this burden. As stated above, he did not tell us what information or argument he would have supplied the district court that might have persuaded her to change her mind and give him a reduced sentence under Guideline § 5K1.1.

CONCLUSION

If I were free to disregard our precedents, I would decline to remand this case for resentencing because Myers has not carried his burden of persuasion to demonstrate prejudice, which he is required to do under Olano's explanation of how we should apply the plain error standard of review under Rule 52 Fed. R. Crim. P.

I have no doubt that the district judge's failure to invite Myers to speak at sentencing was an oversight and she would have granted him this statutory right if counsel had made a simple objection. There is no justification for excusing counsel from lodging an objection in this circumstance.

If I were free to do so, I would join the Fourth, Sixth and Ninth Circuits in holding that Rule 52 of the Federal Rules of Criminal Procedure applies to the trial court's failure to afford

20

a defendant the right to allocution.[12]

---

[12] See, e.g., United States v. Cole, 27 F.3d 996, 998 (4th Cir. 1994); United States v. Riascos-Suarez, 73 F.3d 616, 627 (6th Cir.), cert. denied, 117 S. Ct. 136 (1996) (implicitly applying Rule 52 by reversing for resentencing because the allocution "could have had an effect on his sentence"); United States v. Leasure, 122 F.3d 837, 840 (9th Cir. 1997), cert. denied, 118 S. Ct. 731 (1998).