# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-40096

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JESUS REYES-VALDIVIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(L-99-CR-697-1)

_____

April 4, 2001

Before REYNALDO G. GARZA,
HIGGINBOTHAM, and SMITH,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

Jesus Reyes-Valdivia ("Reyes") pleaded
guilty of illegal reentry after deportation in vi-

olation of 8 U.S.C. § 1326. He appeals his
conviction and sentence, asserting the failure
to honor his right of allocution and the
government's failure to allege in the indictment
every element of the crime of which he was
convicted.[1] Finding no reversible error, we

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] In his original brief, Reyes also contended that his plea was not voluntary, relying on the absence of any contrary evidence in the official record on appeal. After the government supplemented the record with a portion of the transcriptSSheretofore undiscoveredSSthat conclusively established the voluntary nature of the guilty plea, Reyes
(continued...)

affirm.

## I.

After serving time in prison for the sale and transportation of heroin, Reyes was deported to Mexico in 1998. On August 1, 1999, Border Patrol agents arrested him in Laredo, Texas, and he was charged with illegal reentry following removal.

The court entered judgment under § 1326-(b)(2), despite the indictment's failure to allege a prior conviction or to cite subsection (b)(2) of the statute.[2] The court subsequently held a sentencing hearing during which the court never informed Reyes of his right of allocution. Nonetheless, Reyes repeatedly, and sometimes without invitation, participated in the discussion between counsel and the court.

## II.

Reyes contends that the indictment failed to allege that he had committed an aggravated felony as specified in § 1326(b)(2). He does not contest that his prior conviction satisfies the definition of "aggravated felony."

Reyes acknowledges that he failed to raise the issue before the district court; likewise, he admits that his argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S.

224 (1998).[3] Nonetheless, he argues that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), calls *Almendarez-Torres* sufficiently into doubt to allow us to revisit the issue. His argument lacks merit. In *Apprendi*, "the Supreme Court expressly declined to overrule *Almendarez-Torres*." *United States v. Dabeit*, 231 F.3d 379, 984 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1214 (2001).

## III.

Reyes asserts that the failure to advise him of his right of allocution rendered his sentence fatally defective. Rule 32(c)(3)(C), FED. R. CRIM. P., requires a court to "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence . . . ." We review *de novo* the compliance with the Federal Rules of Criminal Procedure. *United States v. Echegollen-Barrueta*, 195 F.3d 786, 789 (5th Cir. 1999). Moreover, we do not subject the issue of allocution to the harmless or plain error analyses of FED. R. CRIM. P. 52; instead, we must vacate any sentence imposed in violation of rule 32(c)(3)(C), irrespective of whether the defendant raised the issue of allocution before the sentencing court or whether the error was harmless. *Id.*[4]

---

[1](...continued)
abandoned that argument in his reply brief, so we do not address it.

[2] Section 1326(b)(2) specifies that, "in the case of any alien . . . whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined . . ., imprisoned not more than 20 years, or both . . . ." Subsection (b)(2) imposes a greater sentence than does § 1326(a), which governs simple reentry after deportation.

[3] *Almendarez-Torres*, 523 U.S. at 235, 247, held that the "aggravated felony" provision of § 1326(b)(2) serves merely as a sentence enhancement, not as an additional element to a crime separate from simple reentry, and therefore that the existence of a prior conviction need not be alleged in the underlying indictment.

[4] The government describes defense counsel's silence in the face of the court's alleged failure to comply with rule 32(c)(3)(C) as "disturbing." To the extent that the government takes issue with

(continued...)

We have recognized both the historical significance and the continuing importance of the right of allocution.[5] Rule 32(c)(3)(C) therefore "envisions a personal colloquy between the sentencing judge and the defendant" wherein the defendant is given a "broad-ranging opportunity to speak." *United States v. Myers*, 150 F.3d 459, 461-62 (5th Cir. 1998). To satisfy rule 32(c)(3)(C),

> the court, the prosecutor, and the defendant must at the very least interact in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence.

*Echegollen-Barreuta*, 195 F.3d at 789 (quoting *United States v. de Alba Pagan*, 33 F.3d 125, 129 (1st Cir. 1994)).

Reyes argues that the court violated rule 32(c)(3)(C) by failing explicitly to invite him to speak on any issue of his choosing before sentencing. The government disagrees, contending that Reyes's interjections during

---

[4](...continued)
what it perceives to be sandbagging by defense counsel, we agree that both the government and the defense bar should take pains to notify the district court of any defects in the colloquy before sentencing. Inasmuch as the government argues that counsel's silence justifies application of a lower standard of review, however, that argument lacks merit in light of our caselaw.

[5] *See Dabeit*, 231 F.3d at 981 (detailing the "several important functions" of the right of allocution); *United States v. Vasquez*, 216 F.3d 456, 457-58 (5th Cir.) ("The right of allocution dates back to 1689."), *cert. denied*, 121 S. Ct. 414 (2000).

the hearing prove not only that he knew he had a right to speak on any subject, but that he in fact exercised that right.

There are several exchanges in the transcript that support the government's contention: When his counsel tried to explain why Reyes had failed to provide the probation department with contact information for any relatives, Reyes interjected, explaining that he had no relatives in the United States. He then proceeded extemporaneously to explain the circumstances surrounding his prior conviction. Similarly, when asked about his expectant wife's due date, Reyes answered the question and then explained that he also had to provide for his parents. He next remarked that his family "ended up being the ones worst affected by this whole situation." At one point, Reyes expressed his remorse to the court.

Furthermore, ReyesSSeach time without invitationSSsupplemented several of his counsel's answers, explaining his training while in prison and the facts surrounding his illegal reentry. He undisputedly felt free to address the court, not only at the court's prompting, but also at his own discretion.

Before sentencing, the court asked the parties whether there was "anything else." The government admits that this query was directed not only to Reyes, but also to both lawyers. The government contends, however, that Reyes should have interpreted it as an invitation to speak.

Given Reyes's substantialSSoften uninvitedSSparticipation in the hearing, we agree that the question put Reyes on notice that he was free to speak on any matter. That invitation, in addition to Reyes's participation throughout the hearing, convinces us that

Reyes "knew he had a right to speak on any subject of his choosing prior to the imposition of sentence." The court thus fulfilled its obligation under rule 32(c)(3)(C).

AFFIRMED.