United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 26, 2004**

Charles R. Fulbruge III
Clerk

REVISED JANUARY 28, 2004
UNITED STATES COURT OF APPEALS
For the Fifth Circuit

No. 01-41164

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MIGUEL ENRIQUE REYNA,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas

Before KING, Chief Judge, and JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, DENNIS, CLEMENT and PRADO, Circuit Judges.[1]

W. EUGENE DAVIS, Circuit Judge:

---

[1]Judge Pickering was not a member of the court when this case was submitted to the court en banc and did not participate in the decision.

We took this case en banc to consider whether the district court's failure to give the defendant an opportunity to allocute as required by Federal Rule of Criminal Procedure 32 is subject to either harmless error or plain error review. For the reasons that follow, we conclude that, in the absence of an objection by the defendant, such a failure is subject to plain error review.

## I. FACTS AND PROCEEDINGS

The panel, in **United States v. Reyna**, 331 F.3d 448 (5th Cir. 2003), gave a cogent statement of the facts and background which we reproduce below:

> Miguel Enrique Reyna plead guilty in October 1996 to possession of a sawed-off shotgun, in violation of 26 U.S.C. §§ 5841, 5861(d), 5871, and was sentenced to 46 months' imprisonment and three years of supervised release.
>
> In February 2000, the district court revoked the term of supervised release because Reyna had been caught driving while intoxicated. The court gave Reyna the option of immediately serving 6 months in prison, or being sentenced to 12 months' imprisonment, with the execution of that sentence suspended for three years of supervised release. Reyna chose the latter option. The court coupled its generosity with a stern warning:
>
>> THE COURT: I will tell you what I will do. I will sentence you to 12 months in jail. I will suspend the execution of those 12 months, which simply means that I will allow you to surrender voluntarily. But the moment you spit on the sidewalk, I don't care whether you get a traffic ticket, you are gone for 12 months. You can do that or I will give you six months today and you will get it over with. Which one do you want?

2

After Reyna chose the 12-month option, the court warned him again: "I am talking about anything. You are gone. You are on your way for 12 months. It is just a matter of me setting a date for voluntary surrender."

During the term of supervised release, Reyna tested positive for drugs. In an August 2001 hearing, the court sentenced Reyna to 12 months' imprisonment and 2 years of supervised release. The court addressed Reyna during the following exchange:

> THE COURT:  The matter before me, then, Mr. Reyna, is simply there is evidence to the effect that you--from a specimen taken from you back in September of the year 2000 that you had ingested cocaine. Is that true?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right.
>
> THE DEFENDANT: Correct. Yes, Your Honor.
>
> THE COURT: Well, you are already on your way . . . You can't blame anybody, can you?
>
> THE DEFENDANT: No.

Later in the hearing, Reyna attempted to say something, but was interrupted by the court. The following colloquy ensued:

> THE COURT: If I could send you away for ten years, I would. You know why? You know why? Because you hurt other people to whom we give this opportunity. Your attorney asks for relief of this kind sometimes. And when people like you sort of break faith and when people are given the benefit of these kinds of things, what you are doing is just hurting other people. You understand that. One thing is to hurt yourself and another one is to affect other persons and you have.

3

All right. Good luck to you.

THE DEFENDANT: Thank you.

Reyna did not object to the denial of his right to allocution.

## II. STANDARD OF REVIEW

Under this court's precedents, the district court's denial of the right of allocution is not subject to plain or harmless error review under Rule 52. Rather we have consistently held that this error requires automatic reversal. **United States v. Dabeit**, 231 F.3d 979, 981 (5th Cir. 2000); **United States v. Myers**, 150 F.3d 459 (5th Cir. 1998). We took this case en banc to reconsider these precedents.

## III. DISCUSSION

When Reyna was sentenced, Fed. R. Crim. P. 32(c)(3)(C) required the district court to "address the defendant personally and determine whether the defendant wishe[d] to make a statement and to present any information in mitigation of the sentence" before imposing sentence.[2] **United States v. Rodriguez**, 23 F.3d 919, 921 (5th Cir. 1994). Under the law of this Circuit, the right to allocution

---

[2] Effective December 1, 2002, the allocution requirement moved to Rule 32(i)(4)(A)(ii) but no substantive change is made in the restyled Rule. "Before imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."

4

applies at sentencing following revocation of supervised release.[3] **Id.** Although the district court addressed Reyna prior to imposing sentence, the court did not give Reyna the opportunity to speak in mitigation of his sentence. We therefore agree with the panel that the district court erred in failing to comply with Rule 32.

The government argues, however, that even if the district court erred in failing to give Reyna an opportunity to allocute, because neither Reyna nor his counsel objected, we should review this error under the prism of either harmless error or plain error as provided by Rule 52. Fed. R. Crim. P. Rule 52 provides:

> (a) Harmless error. Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

> (b) Plain error. A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.[4]

As a practical matter, Rule 52(a) applies when a defendant has made a timely objection to an error and the reviewing court engages in an inquiry to determine whether the error was harmless, that is whether the defendant suffered prejudice from the error. **United States v. Olano**, 507 U.S. 725, 734 (1993). Because Reyna

---

[3] An amendment is currently being proposed to Rule 32.1 which would expressly recognize that a defendant has the right of allocution at revocation hearings.

[4] As amended April 29, 2002, effective December 1, 2002. Rule 52 "was amended as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only." Fed. R. Crim. P. 52, Advisory Committee Notes, 2002 Amendments.

did not object to the court's failure to allow allocution, Rule 52(a) has no potential application to this case. Rule 52(b), on the other hand, applies when no timely objection was made. Thus, Rule 52(b) is the subsection of this rule that has potential application to this case.

As stated above, our cases have consistently held that we must automatically reverse a district court which fails to give the defendant an opportunity for allocution as required by Rule 32. **Dabeit**, 231 F.3d at 981; **Myers**, 150 F.3d at 464-65. This position is not without Supreme Court authority and reflects the high respect accorded the right to allocute at sentencing. In **Green v. United States**, a plurality of the Supreme Court determined that the defendant had failed to meet his burden of showing that he was not accorded his right of allocution. However, eight justices agreed that in future cases, trial judges should "unambiguously address themselves to the defendant" and thus "leave no room for doubt that the defendant had been issued a personal invitation to speak prior to sentencing." **Green v. United States**, 365 U.S. 301, 305 (1961). The trial court had addressed the defendant and his counsel jointly, asking "did you want to say something?" rather than speaking directly to the defendant. **Id.** at 302. Justice Frankfurter, speaking for the four justice plurality, explained why the right of allocution is so deserving of protection.

The design of Rule 32(a) did not begin with its promulgation: its legal provenance was the common-law right of allocution. As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal. *See Anonymous, 3 Mod. 2065, 266, 87 Eng. Rep. 175 (K.B.)* Taken in the context of its history, there can be little doubt that the drafters of Rule 32(a) intended that the defendant be personally afforded the opportunity to speak before imposition of sentence. We are not unmindful of the relevant major changes that have evolved in criminal procedure since the seventeenth century—the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his own behalf, and the right to counsel. But we see no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain. None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself. We are buttressed in this conclusion by the fact that the rule explicitly affords the defendant two rights: "to make a statement in his own behalf," and "to present any information in mitigation of punishment." We therefore reject the Government's contention that merely affording defendant's counsel the opportunity to speak fulfills the dual role of Rule 32(A).

**Id.** at 304.

Four justices speaking in dissent through Justice Black disagreed with the Court's decision to deny relief to the defendant and stressed the importance of enforcing the rule by requiring remand. In their view,

A rule so highly prized for so sound a reason for so long a time deserves to be rigorously enforced by this Court, not merely praised in resounding glittering generalities calculated to soften the blow of nonenforcement.

7

**Id.** at 311 (Black, J., dissenting).

One year after the **Green** decision, the Supreme Court held in **Hill v. United States**, 368 U.S. 424 (1962), that violation of a defendant's right to allocution was not a predicate for habeas corpus relief absent aggravating circumstances. After stating that the simple failure of the trial court to address a defendant who had been given the opportunity for allocution is not an error of the magnitude that is cognizable under a writ of habeas corpus, the Court stated:

> It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect that inherently results in a complete miscarriage of justice nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.

368 U.S. at 428. However, the **Hill** case also observed in a footnote that the appropriate remedy on direct appeal for a violation of the rule is set forth in **Van Hook v. United States**, 365 U.S. 609, 81 S.Ct. 823 (1961). **Van Hook** is a one sentence opinion that cites **Green** as requiring reversal and remand of the defendant's case for resentencing when a violation of Rule 32 occurs. None of these cases mention Rule 52 of the Criminal Rules.

Because the Supreme Court did not mention Rule 52 in **Green**, **Van Hook** or **Hill**, we have no way of knowing whether the Court simply did not consider Rule

8

52 because it was not brought to their attention or whether it was the Court's belief at that time that the Rule did not apply to violations of the right of allocution on direct appeal and that the appropriate remedy for such a violation was automatic re-sentencing. We therefore glean from our review of **Green, Van Hook** and **Hill**, that the right of allocution is deeply rooted in our legal tradition and an important, highly respected right; nonetheless it is neither constitutional nor jurisdictional.

We have received very little guidance from the Supreme Court about the right of allocution since its decision in **Hill** in 1962.[5] The Supreme Court, however, has been very active in the forty years since **Green**, **Van Hook** and **Hill** in clarifying the concepts of harmless error and plain error set forth in Rule 52. Until recently, it was unclear whether on direct appeal Rule 52(b) should apply to every conceivable error to which a defendant failed to object, or whether there existed a class of violations so serious that automatic reversal was required without application of Rule 52(b). In **Olano**, the Supreme Court answered this question. 507 U.S. at 731. It stated that a criminal defendant's "constitutional right or a right of any other sort" may be

---

[5] The right was mentioned briefly in the discussion of other issues in **Groppi v. Leslie**, 404 U.S. 496, 501, 30 L. Ed. 2d 632, 92 S. Ct. 582 (1972); **United States v. Behrens**, 375 U.S. 162, 165, 11 L. Ed. 2d 224, 84 S. Ct. 295 (1963); **Andrews v. United States**, 373 U.S. 334, 336-37, 10 L. Ed. 2d 383, 83 S. Ct. 1236 (1963); and **Machibroda v. United States**, 368 U.S. 487, 489, 7 L. Ed. 2d 473, 82 S. Ct. 510 (1962). **McGautha v. California**, 402 U.S. 183, 28 L. Ed. 2d 711, 91 S. Ct. 1454 (1971), discussed the right in greater detail, but simply reiterated what had been said in **Green** and **Hill**.

forfeited by the failure to make a timely objection.  **Id.** (internal quotations and citations omitted). Accordingly, the Court suggested that all forfeited errors in a criminal proceeding are subject to Rule 52(b) analysis.

In **Johnson v. United States**, 520 U.S. 461, 466, 117 S.Ct. 1544 (1997), the Supreme Court specifically stated that the seriousness of the claimed error does not remove it from the application of Rule 52 and that the Court had no authority to carve exceptions to Rule 52(b) based on the gravity of the charged error, including specifically the constitutional error claimed by the defendant, Johnson.  (Johnson complained that the court violated his Sixth Amendment right to trial by jury when the court, without objection, decided the issue of materiality in his perjury trial rather than submitting it to the jury.)  Finally in **United States v. Vonn**, 535 U.S. 55, 122 S.Ct. 1043 (2002), the Supreme Court applied Rule 52(b) analysis to an error in taking a guilty plea under Rule 11 of the Federal Rules of Criminal Procedure.  The district court failed to address the defendant when accepting the plea and the defendant did not object.  Rule 11, like Rule 32, states that the trial court "must address the defendant personally."  **Vonn** describes Rule 52(b) as "applying by its terms to error in the application of any other Rule of criminal procedure."  **Id.** at 65.

These decisions from the Supreme Court strictly applying Rule 52 regardless

of the seriousness of the claimed error lead us to conclude that we should reexamine the facially simple directive of **Green, Van Hook** and **Hill** and our cases predicated on these decisions that on direct appeal the defendant is automatically entitled to re-sentencing when he is not afforded his right of allocution. Doing so, we conclude that errors resulting from a denial of the right of allocution under Rule 32are subject to plain error review under Rule 52. The question then is how to apply Rule 52(b)'s plain error review to this error.

Under **Olano**, we first ask whether the district court committed an "'error' that is 'plain' and that 'affect[s] substantial rights.'" 507 U.S. at 732. If those criteria are met, we have the discretion to correct the forfeited error but should do so only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." **Id.** (citing **United States v. Young**, 470 U.S. 1, 15 (1985), quoting **United States v. Atkinson**, 297 U.S. 157, 160 (1936)). Applying this framework, we find that the district court committed error when it failed to follow the procedures in Rule 32 and personally address Reyna and allow him to speak in mitigation of his sentence. Given the clear language of the rule and the Supreme Court case law outlined previously, this error was obvious or plain.

Our next inquiry is whether this error affected Reyna's substantial rights. Ordinarily, in order to establish that an error "affects substantial rights" under

11

**Olano**, a defendant must establish that the error was "prejudicial," i.e. that it

"affected the outcome of the district court proceedings." **Olano**, 507 U.S at 734.

The defendant bears the burden of persuasion on this point. **Id.** at 734. **Olano**

recognized however that some errors may be presumed "prejudicial if the defendant

cannot make a specific showing of prejudice." **Id.** at 735.

 We are not the first to address this question and we therefore benefit from the

consideration this question has been given by other circuit courts.[6]  We find most

---

[6]  The Eighth Circuit continues to remand for resentencing in cases involving errors of this type. **United States v. Walker**, 896 F.2d 295, 301 (8ᵗʰ Cir. 1990).  Some cases from that circuit employ the words harmless error analysis, but still in effect automatically reverse and remand. **United States v. Patterson**, 128 F.3d 1259 (8ᵗʰ Cir. 1997); **United States v. Vanhorn**,1998 U.S. App. LEXIS 13638; 82 A.F.T.R.2d (RIA) (8ᵗʰ Cir. 1998) (unpublished).

Several circuits follow an approach similar to that adopted by the Third Circuit in **Adams**, discussed above. **United States v. Adams**, 252 F.3d 276 (3d Cir. 2001).  They have concluded that resentencing is not required if the defendant received the lowest possible sentence at the bottom of the guideline range and no arguments were made to the sentencing court that the range was incorrect for any reason - including arguments for downward departure or against upward departure, or for change in offense level or criminal history category.  See **United States v. Riascos-Suarez**, 73 F.3d 616, 627 (6ᵗʰ Cir. 1996); **United States v. Lewis**, 10 F.3d 1086, 1092 (4ᵗʰ Cir. 1993); **United States v. Mejia**, 953 F.2d 461, 468 (9ᵗʰ Cir. 1992).  See also **United States v. Cole**, 27 F.3d 996, 999 (4ᵗʰ Cir. 1994) (raising ground that defendant  might have argued even though he did not argue those grounds on appeal).  The Eleventh Circuit's approach is slightly different.  It applies a plain error review to a Rule 32(c)(3) violation and only remands for resentencing when the defendant does not receive the lowest possible sentence within the applicable guideline range.  In this circumstance, the court considers that the defendant has suffered "manifest injustice." **United States v. Prouty**, 303 F.3d 1249 (11ᵗʰ Cir. 2002).  See also **United States v. Tamayo**, 80 F.3d 1514 (11ᵗʰ Cir. 1996), (no manifest injustice where the defendant was given an opportunity to speak at his original sentencing, the resentencing was limited in scope and the defendant failed to take advantage of the district court' invitation to file supplemental authority and objections within 10 days of the resentencing hearing); **United States v. Rodriguez-Velasquez**, 132 F.3d 698 (11ᵗʰ Cir. 1998) ("harmless error" and "no manifest injustice" when defendant made no objections to the amount of the sentence and was given the lowest possible sentence within the guidelines.)

The Ninth Circuit follows several different approaches.

persuasive and practical the work of the Third Circuit in **United States v. Adams,**
252 F.3d 276 (3d Cir. 2001). That court recognized that a defendant would have an
onerous burden establishing that he suffered prejudice as a result of the court's
failure to allow him to allocute. He "would have to point to statements that he
would have made at sentencing, and somehow show that these statements would
have changed the sentence imposed by the District Court." **Id.** at 287. The Third
Circuit concluded that given the nature of the right and the difficulty of proving that
a violation affected a specific sentence, it would "presume prejudice when a
defendant shows a violation of the right and the opportunity for such violation to
have played a role in the district court's sentencing decision." **Id.** This could occur
even if the defendant was sentenced at the bottom of the Guideline range if

> a searching review of the district court record reveals that there are any
> disputed facts at issue at sentencing, or any arguments raised in

---

Compare **United States v. Leasure**, 122 F.3d 837, 841 (9th Cir. 1997)(holding resentencing inappropriate unless the defendant can identify specific statements on appeal that he would have made at sentencing that likely would have impacted his sentence) and **Mejia**, 953 F.2d at 468 (holding resentencing not warranted if the defendant already received the lowest possible sentence under the Sentencing Guidelines) with **United States v. Medrano**, 5 F.3d 1214, 1219 (9th Cir. 1993) (adopting a rule that in practice requires automatic resentencing, because even though the defendant in the trial court had raised no grounds for a lower sentence, the court nevertheless remanded for resentencing based on speculation about what the defendant might have said during allocation had he been given the chance) and **United States v. Navarro-Flores**, 628 F.2d 1178, 1184 (9th Cir. 1980) (automatically remanding for resentencing when the right of allocution is violated).

**Adams**, 252 F.3d at 282, n.4.

13

connection with sentencing, that if resolved in the defendant's favor would have reduced the applicable Guidelines range or the defendant's ultimate sentence.

**Id.** In **Adams**, the court found prejudice because Adams had been sentenced in the approximate middle of the applicable Guidelines range and defense counsel had made several arguments related to sentencing that were decided against Adams. He had challenged a two-level upward departure, his criminal history category, and the denial of a downward departure request. **Id.** We find this approach both pragmatic and sound. Because the analysis under the **Adams** approach is record specific, it avoids speculation as to what the defendant might have said or argued to mitigate his sentence. Applying that analysis here, we presume that Reyna was prejudiced by the district court's error because he was sentenced at the top of the applicable range under the Guidelines, as well as to the maximum possible term of supervised release.

We go one further step in the analysis. Under the final prong of **Olano**, we retain the discretion to correct the district court's error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." **Olano**, 507 U.S. at 736. At this point, we depart from the conclusion reached by the Third Circuit in **Adams**. That court concluded that the denial of the right to allocution which has the potential to prejudice the defendant is the sort of error that would affect "the

fairness, integrity or public reputation of judicial proceedings." Accordingly, the court elected to correct the error and remanded for resentencing. **Adams**, 252 F.3d at 288-89.

In our view, further inquiry is required. We decline to adopt a blanket rule that once prejudice is found under the rule stated above, the error invariably requires correction. As recognized by the Supreme Court in **Hill**, denial of the right to allocution "is not a fundamental defect that inherently results in a complete miscarriage of justice nor an omission inconsistent with the rudimentary demands of fair procedure." **Hill**, 368 U.S. at 428. In a limited class of cases, a review of the record may reveal, despite the presence of disputed sentencing issues, that the violation of a defendant's right to allocution does not violate the last **Olano** prong. This case is a good example. This was Reyna's third appearance before this district judge, his second for violations of the terms of his supervised release. When the district judge sentenced Reyna for his first violation of the terms of his supervised release, he gave him the option of serving 6 months in prison or being sentenced to a 12 month "suspended sentence," followed by a three year term of supervised release.[7] The court warned Reyna that any violation would result in an immediate

---

[7] Although the district court spoke in terms of a suspended sentence, suspended sentences have not been recognized under federal law since 1987. **United States v. Landeros-Arreola**, 260 F.3d 407, 413 (5th Cir. 2001). In essence, the district court simply continued Reyna's supervised release.

15

sentence of 12 months in prison. After Reyna chose the option of supervised release, the district court warned him again -

> I am talking about anything. You are gone. You are on your way for 12 months. It is just a matter of me setting a date for voluntary surrender.

When the district court made the order to continue Reyna on supervised release, it made a finding to the effect that Reyna "owes us 12 months. The slightest - the slightest variance from the condition he is gone. We don't need any further hearing." The district court again asked Reyna if that was what he wanted, Reyna replied "yes." Clearly Reyna had the opportunity to allocute both at his original sentencing and when resentenced following his first violation of supervised release.

When Reyna again violated the terms of supervised release by testing positive for drugs, the court enforced its agreement with Reyna and did exactly what it had promised Reyna it would do, it sentenced him to 12 months imprisonment. Reyna's comments at his initial appearance demonstrate that he knew this would happen. When the Magistrate Judge told Reyna that Judge Vela could revoke his term of supervised release and impose a prison sentence of up to two years, Reyna replied, "I've been sentenced already to a year by Mr. Filemon Vela February the 3rd. . . . Judge Vela even told me I didn't have to see him no more. That's what he said."

The district court held to their original bargain, even though the judge indicated his desire to sentence Reyna to a longer period of imprisonment because Reyna's behavior was a breach of faith that made it harder to show other defendants similar leniency. On the particular facts of this case, we are satisfied that the district court's error in failing to address Reyna and allow him to speak in mitigation of his sentence did not seriously affect the fairness, integrity or public reputation of his sentencing proceedings. Accordingly, we decline to exercise our discretion to correct the district court's error and affirm Reyna's sentence.

## IV.

In summary, we conclude that the district court erred in failing to comply with Fed. R. Crim. P. 32(c)(3)(C)'s requirement that the court address the defendant and give him an opportunity to make a statement in mitigation of sentence. We hold, however, that this unobjected to error should be analyzed under Fed. R. Crim. P.52(b) so that the district court's error is subject to plain error review. We further conclude that when such an error occurs without objection by the defendant and the record reveals that the district court did not sentence at the bottom of the guideline range or if the court rejected arguments by the defendant that would have resulted in a lower sentence, we will presume that the defendant suffered prejudice from the error, i.e. that the error affected the defendant's substantial rights. Once we

determine that the defendant suffered prejudice, we will ordinarily remand for resentencing. But, even if the defendant is considered prejudiced under this test, we will conduct a thorough review of the record to determine if we should exercise our discretion to correct the error, by examining whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings," under the final prong of **Olano**. Based on the unusual facts developed in this record, discussed in detail above, we decline to exercise our discretion to correct the district court's error and affirm Reyna's sentence. AFFIRMED.

EDITH H. JONES, Circuit Judge, joined by JOLLY, SMITH, EMILIO M. GARZA, and CLEMENT, Circuit Judges, concurring:

I concur in the judgment in this case and in the court's decision applying plain error analysis to determine whether the denial of a defendant's right of allocution constitutes reversible error where the denial was not objected to in the trial court. This result is compelled by United States v. Vonn, 535 U.S. 55, 122 S.Ct. 1043 (2002). In Vonn, a nearly unanimous Supreme Court applied plain error review to guilty plea colloquies that were alleged, for the first time on appeal, to violate Fed. R. Crim. Proc. 11. See id. at 59. I write separately because the court's articulation of "presumed prejudice" at the second step of the plain error inquiry seems inconsistent with Vonn.[8] Nevertheless, plain error analysis, even as inter-

---

[8]In Vonn, the Supreme Court repeated the analytical steps to be taken in conducting plain error analysis. First, the error by the trial court must be "plain." Second, the defendant has the burden to show that his "substantial rights" were affected. See Vonn, 535 U.S. at 63 (citing United States v. Olano, 507 U.S. 725, 734-735 (1993)). Third, "because relief on plain-error review is in the discretion of the reviewing court, a defendant has the further burden to persuade the court that the error seriously affected the fairness, integrity or public reputation of judicial proceedings." Id. (internal citations and quotation marks omitted). Notably, the Vonn Court rejected Justice Stevens' position expressed in his lone

preted by the en banc court, will still compel a denial of relief in nearly all cases where a defendant, represented by counsel, did not point out to the trial court the "denial" of his right to allocute.

By adopting a "presumed prejudice" approach to the un-objected-to denial of allocution in the trial court, this court has effectively shifted a significant portion of the burden of proving plain error from the defendant. Justice Souter's opinion in <u>Vonn</u> expressly distinguishes between harmless error and plain error review based on which party bears the burden to prove that a violation of a defendant's substantial rights has taken place. As Justice Souter noted, harmless error review (consideration of an error timely raised by the defendant), places the burden on the government. But

> [w]hen an appellate court considers error that qualifies as plain, the tables are turned on demonstrating the substantiality of any effect on a defendant's rights: the defendant who sat silent at trial has the burden to show that his "substantial rights" were affected. <u>Olano</u>, 507 U.S. at 734-735. <u>Vonn</u> 535 U.S. at 62-63, 122 S.Ct. at 1048.

Contrary to this distinction, the en banc court today relieves a silent defendant of the burden of showing that his "substantial rights" were affected by allowing a

---

partial dissent regarding the existence of such a presumption. <u>See</u> <u>id.</u> at 73 n.10; <u>id.</u> at 76-80 (Stevens, J., concurring in part and dissenting in part).

"presumption of prejudice."[9]  Our court asserts that such a presumption, expressed but not explained in <u>Olano</u>, is appropriate because of (a) the elevated and historical importance of the right of allocution; (b) the  difficulty of proving prejudice from a denial of this right; and (c) the fear that trial judges will not otherwise take allocution seriously.  These reasons are inconsistent with the Supreme Court's thus-far uniform application of the plain error rule.

First, I agree that a defendant's right of allocution is important, but can it be more important than the right to enter a voluntary guilty plea, which was in <u>Vonn</u> held subject to plain-error review without presumed prejudice?  Moreover, in <u>Vonn</u>, unlike here, there existed constitutional underpinnings of standards for guilty pleas.  <u>Compare</u> <u>Vonn</u>, 535 U.S. at 67 (discussing the Court's decision in <u>McCarthy v. United States</u>, 394 U.S. 459, 465 (1969), which noted the constitutional dimensions of guilty pleas), <u>with</u> <u>Hill v. United States</u>, 368 U.S. 424, 428 (noting that allocution error is "neither jurisdictional nor constitutional," nor is it  "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with rudimentary demands of fair procedure").  Further,

---

[9]Unfortunately, the en banc court's application of "presumed prejudice" extends to nearly all allocution appeals by triggering the presumption if a sentence is anything other than the bottom of the Guidelines and if there were disputed issues at sentencing. These two criteria describe virtually the entire universe of Guideline sentences.

<u>Vonn</u> interpreted a federal rule that, like the rule involved here, requires the court to address the defendant "personally" in open court. Given the linguistic identity between Fed. Crim. Rules 11 and 32(c)(3) and the superior constitutional pedigree of a guilty plea's voluntariness, it seems capricious for this court to deviate from <u>Vonn</u> and diminish the defendant's burden of proving harm to his substantial rights.[10]

Second, it is far from clear that proving harm to a defendant's substantial rights in this context is more difficult than with regard to other forfeited errors. The majority extols the intangible benefit from a defendant's allocation at sentencing, but one might more realistically conclude that only a mediocre lawyer must depend on his client's unschooled eloquence to garner mercy from the judge. If there are facts that mitigate culpability and suggest a lower sentence, our system presupposes that the effective lawyer raised them in support of his client with or without allocation. Such facts, in turn, are reviewable on appeal without requiring a presumption of prejudice. Further, that the right of allocation was denied hardly suggests a defendant's sentence is harsher than it might have been. Indeed, many defendants may incriminate themselves further by speaking up at sentencing. Mere

---

[10]The court relies on authority from other circuits to fortify its presumed prejudice approach. Significantly, <u>none</u> of the cases cited by the majority post-dates <u>Vonn</u>.

suppositions do not justify a presumption of prejudice.

Third, the court seems to fear that judges will take a defendant's allocution right less seriously if this aspect of plain error analysis is maintained. Such reasoning was dispatched in <u>Vonn</u> in no uncertain terms. Justice Souter observed the potential, absent plain error, for a defendant's "lying behind the log" with regard to Rule 11 guilty plea errors, and he responded as follows:

> This result might, perhaps, be sufferable if there were merit in Vonn's objection that applying the plain-error standard to a defendant who stays mum on Rule 11 error invites the judge to relax . . . . But, rhetoric aside, that is always the point of the plain-error rule: <u>the value of finality requires defense counsel to be on his toes, not just the judge, and the defendant who just sits there when a mistake can be fixed cannot just sit there when he speaks up later on</u>. 122 S.Ct. at 1054, 535 U.S. at 73. (emphasis added).

In a footnote, Justice Souter reinforced this point, stating that "[i]t is fair to burden the defendant with his lawyer's obligation to do what is reasonably necessary to render the guilty plea effectual and to refrain from trifling with the court." <u>Id</u>. at 73 n.10 (emphasis added).

For all these reasons, it is incorrect and imprudent to distinguish plain error review in denial of allocution cases from the test articulated in <u>Vonn</u>.

Nevertheless, the court's presumed prejudice approach is less troubling than it could be. After inverting the harmless error burden onto the government, the

court majority snatches victory out of this defendant's hands by finding that the trial court's plain error did not "seriously affect the fairness, integrity, or public reputation of the proceedings as a whole." This last prong of plain error analysis, although subject to the court's discretion, cannot be easily satisfied. The court correctly describes the facts of the case before us as highly unusual, but there is no signal concerning future, less unusual cases. In most of these appeals, to prevail, defendants will have to show some objective basis that would have moved the trial court to grant a lower sentence; otherwise, it can hardly be said that a miscarriage of justice has occurred. See Johnson v. United States, 520 U.S. 461, 469, 1175 S.Ct. 1544, 1550 (1997).

In sum, although I believe the court has deviated from the clear precepts laid out in Vonn, I agree with the final result and remain convinced that a defendant's best hope for an effective allocution lies with his attorney's vigilant representation in the trial court.