

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2001

# United States v. Adams

Precedential or Non-Precedential:

Docket 00-1212

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Adams" (2001). *2001 Decisions.* Paper 113.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 23, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-1212

UNITED STATES OF AMERICA

v.

MICHAEL ANTHONY ADAMS,
      Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 99-cr-00708-1)
District Judge: Honorable Stewart Dalzell

Argued November 6, 2000

Before: ROTH, RENDELL, and STAPLETON,
Circuit Judges.

(Filed: May 23, 2001)

       Robert Epstein [ARGUED]
       Defender Association of Philadelphia
       Federal Court Division
       Curtis Center, Independence
        Square West
       Suite 540 West
       Philadelphia, PA 19106
       Counsel for Appellant
       Michael Anthony Adams

        Thomas M. Zaleski [ARGUED]
        Office of United States Attorney
        615 Chestnut Street
        Philadelphia, PA 19106
        Counsel for Appellee
        United States of America

OPINION OF THE COURT

RENDELL, Circuit Judge.

I. Introduction

We are asked to determine whether the appellant, Michael Anthony Adams, is entitled to resentencing because the District Court failed to observe the r equirement of Federal Rule of Criminal Procedure 32(c)(3)(C), which mandates that the District Court personally addr ess the defendant before imposing sentence and deter mine whether he wishes to make a statement or present any information in mitigation of the sentence. We conclude that Adams should be resentenced, and accordingly will vacate the judgment of the District Court and remand for resentencing.

We note that Adams also seeks resentencing on the basis of the District Court's alleged failure to verify that Adams and his defense counsel had read and discussed the presentence report, as requir ed under subsection (A) of the same Rule. However, the resentencing r emedy which we afford Adams based upon subsection (C) obviates the need to decide that issue. Also, we will not reach the third issue raised on appeal, namely, whether the District Court properly refused to grant a downwar d departure from the Sentencing Guidelines range, because we lack jurisdiction over this issue.1

---

1. Adams contends that the District Court misappr ehended its authority to depart from the Guidelines range based upon substandard presentence confinement conditions. Having carefully reviewed the record, we conclude that the District Court did understand its authority but declined to exercise its discretion to depart downward, and thus we do not have jurisdiction to review this aspect of Adams' sentence. E.g., United States v. Stevens, 223 F.3d 239, 247 (3d Cir. 2000).

II. Facts and Procedural Background

Adams pled guilty to two counts of bank robbery. At the sentencing hearing, his counsel voiced several objections to the presentence report. He objected to a two-level upward adjustment recommended by the report based upon a threat that Adams had made towards a bank teller during one of the robberies. He further challenged the assessment of eleven criminal history points (which established a criminal history category of V) as over-r epresenting Adams' criminal activity, and sought a downward departure based upon substandard confinement conditions. In addition, he objected to the inclusion in the presentence r eport of information relating to Adams' suspected involvement in three other bank robberies that wer e not charged. Finally, he challenged the restitution amount recommended in the report.

The District Court sustained the objection to the information in the presentence report as to Adams' suspected involvement in other bank robberies, but otherwise overruled the objections and denied the motion for a downward departure. After some discussion, the District Court asked, "Anything else?" Adams' counsel replied, "Do you want to hear me as far as sentencing is concerned?" The District Court responded, "I want to hear what you want to say about that, of course. And then I want to hear if the remorseful defendant has anything he wants to say." App., Vol. II, at 111a.

The District Court heard argument both fr om defense counsel and the government with respect to sentencing and next inquired of Adams' counsel: "Okay. W ould your client like to exercise his right of allocution?" After a pause, Adams' counsel replied, "No." Id. at 113a. Adams' counsel did not object to the District Court's failur e to address Adams personally to inquire if he wished to make a statement on his own behalf. The District Court then imposed a sentence of 105 months, well within the Sentencing Guidelines range of 92 to 115 months (which corresponded to an offense level of 24 and a criminal history of V). Id. at 111-13a. Finally, the District Court entertained a recommendation as to the place of service of

sentence and advised Adams personally with r espect to his right to appeal. Id. at 115–16a.

III. Jurisdiction and Standard of Review

We have jurisdiction over this appeal pursuant to both 28 U.S.C. S 1291, which provides for r eview of final decisions of the district courts, and 18 U.S.C. S 3742(a)(1), which provides for review of final sentences allegedly imposed in violation of law.

Because Adams did not raise an objection at his sentencing hearing, we review the District Court's failure to comply with Federal Rule of Criminal Procedur e 32(c)(3)(C) for plain error. See Fed. R. Crim. P. 52(b) (stating that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"); Johnson v. United States, 520 U.S. 461, 466 (1997) (explaining that when no objection is made in the district court, the plain error standar d of Rule 52(b) governs all direct appeals from judgments of conviction in the federal courts, regardless of the seriousness of the error claimed).

IV. Discussion

Adams contends that the District Court's failur e to comply with its affirmative duty to personally address him requires that he be resentenced. The government, on the other hand, argues that resentencing is not required because Adams demonstrates no prejudice fr om the District Court's oversight, and thus there was no plain error under Rule 52(b) of the Federal Rules of Criminal Pr ocedure.

As an initial matter, we note that the parties agree that the District Court failed to comply with Rule 32(c)(3)(C), which safeguards the defendant's right of allocution. The Rule states that, prior to imposing sentence, the district court must "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." The District Court was obviously aware of Adams' right of allocution, and specifically asked Adams'

4

counsel: "Would your client like to exer cise his right of allocution?" However, the Supreme Court has held that this query, directed towards counsel, does not satisfy the requirement that the district court personally address the defendant himself. E.g., Green v. United States, 365 U.S. 301, 305 (1961) (plurality opinion); id. at 307 (Black, J., dissenting); see also United States v. Allegrucci, 299 F.2d 811, 815 (3d Cir. 1962). Accordingly, the District Court erred, and thus we are squarely pr esented with the question whether a violation of the right of allocution contained in Rule 32(c)(3)(C) necessitates a r emand for resentencing.

In addressing the issue before us, we do not write on a clean slate. At the same time, the writing that is currently on the slate is not particularly clear: ther e are old markings still visible along with the new ones, and we will attempt to reconcile the two. A historical perspective is in order.

In 1961 and 1962, the Supreme Court issued thr ee opinions that characterized the right of allocution as an important safeguard that should be strictly enforced according to its terms. In Gr een v. United States, 365 U.S. 301 (1961), the Justices could not have expr essed more clearly their view that the right of allocution under Rule 32 is highly respected. At the conclusion of sentencing, the trial judge had asked, "Did you want to say something?" Id. at 302. It was unclear from the recor d whether this question had been posed to the defendant, or mer ely to defense counsel. Id. at 304–05. Given this uncertainty, a plurality of the Court determined that the defendant had failed to meet his burden of showing that he was not accorded his right of allocution. Id. at 305. However, eight of the Justices agreed that, in the futur e, trial judges should "unambiguously address themselves to the defendant" and thus "leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing."2  Id.; id. at 309 (Black, J., dissenting).

_____

2. In fashioning this requirement, the Green Court interpreted Federal Rule of Criminal Procedure 32(a), which at the time simply stated that "[b]efore imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any

5

Justice Frankfurter, writing for the four -Justice plurality, eloquently described why the right of allocution is held in high esteem:

> The design of Rule 32(a) did not begin with its promulgation; its legal provenance was the common-law right of allocution. As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal. See Anonymous, 3 Mod. 265, 266, 87 Eng. Rep. 175 (K.B.). Taken in the context of its history, there can be little doubt that the drafters of Rule 32(a) intended that the defendant be personally afforded the opportunity to speak befor e imposition of sentence. We are not unmindful of the r elevant major changes that have evolved in criminal procedur e since the seventeenth century-- the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his own behalf, and the right to counsel. But we see no reason why a procedural rule should be limited to the cir cumstances under which it arose if reasons for the right it protects remain. None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself. W e are buttressed in this conclusion by the fact that the rule explicitly affords the defendant two rights: "to make a statement in his own behalf," and "to pr esent any information in mitigation of punishment." W e therefore reject the Government's contention that merely

---

information in mitigation of punishment." Green, 365 U.S. at 303 n.1. As a result of Green, Rule 32 was amended in 1966 to include the direction that the court address the defendant personally and ask if he wishes to make a statement. See Fed. R. Crim. P . 32 advisory committee's note to 1966 Amendment; see also United States v. Phillips, 936 F.2d 1252, 1255-56 (11th Cir. 1991) (discussing the development of Rule 32). The current Rule 32(c)(3)(C), which is the subject of Adams' appeal, contains this requirement that the court personally address the defendant.

affording defendant's counsel the opportunity to speak fulfills the dual role of Rule 32(a).

Green, 365 U.S. at 304.

Justice Black in dissent, joined by three Justices, wrote even more forcefully in support of the right of allocution, as he took issue with the Court's decision not to grant the defendant relief:

The language of Mr. Justice FRANKFURTER'S opinion does not jibe with the harsh result reached in refusing to accord to petitioner the benefit of Rule 32(a). As he points out, that Rule embodies the practice of the English-speaking world for three centuries or more, based as he properly says upon the belief that,"The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." A rule so highly prized for so sound a reason for so long a time deserves to be rigorously enforced by this Court, not mer ely praised in resounding glittering generalities calculated to soften the blow of nonenforcement.

Id. at 311 (Black, J., dissenting).

One year later, in Hill v. United States , 368 U.S. 424 (1962), the Supreme Court again bolster ed the right of allocution, while at the same time limiting its r each. The Court reinforced the right by explaining in a footnote that the appropriate remedy on direct appeal for a trial court's failure to honor the right of allocution in Rule 32 is set forth in Van Hook v. United States, 365 U.S. 609 (1961). Hill, 368 U.S. at 429 n.6. Van Hook , in turn, is a one-sentence opinion that cites Green as requiring reversal and remand of defendant Van Hook's case for resentencing. Van Hook, 365 U.S. at 609. Consequently, Hill  appears to stand for the proposition that, on direct appeal, a defendant is automatically entitled to resentencing if the trial court violates the defendant's right of allocution by, for example, failing to personally address him prior to sentencing.

At the same time, the Hill Court limited the right of allocution by holding that violations of the right could not be redressed by way of a habeas corpus petition, absent

7

aggravating circumstances. Hill, 368 U.S. at 428-29. If the trial court simply failed to comply with "the for mal requirements of the Rule" by, for example, neglecting to personally address the defendant prior to sentencing, then habeas relief would be inappropriate. Id. at 429. In declining to recognize such a violation as a basis for habeas relief, the Court expounded on the natur e of the right of allocution:

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect that inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present "exceptional circumstances where the need for the r emedy afforded by the writ of habeas corpus is apparent."

Id. at 428.

It is noteworthy that Green, V an Hook, and Hill contain no mention of Federal Rule of Criminal Procedur e 52. Rule 52, which has remained unchanged since its adoption in 1944 and was intended as a restatement of existing law, see Fed. R. Crim. P. 52 advisory committee notes, sets forth the concepts of harmless error and plain error on direct review in the federal appellate courts. Rule 52 provides:

> (a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

> (b) Plain Error. Plain err ors or defects affecting substantial rights may be noticed although they wer e not brought to the attention of the court.

Therefore, the over-arching consideration of Rule 52 is whether an error "affects substantial rights." In practice, Rule 52(a) applies when the defendant has made a timely objection to an error, and the court of appeals normally engages in a so-called "harmless err or" inquiry to determine

8

whether the error was prejudicial to the defendant, with the government bearing the burden of persuasion on the issue of prejudice. E.g., United States v. Olano, 507 U.S. 725, 734 (1993) (discussing the application of Rule 52). When the defendant has not objected in the district court, Rule 52(b) applies, which normally requires the same kind of inquiry as that dictated by Rule 52(a), with one crucial dif ference: it is the defendant rather than the government who bears the burden of persuasion with respect to prejudice. Id. Yet the Supreme Court's omission of any refer ence to Rule 52 in Green, Van Hook, orHill is curious, perhaps reflecting its belief (at least at that time) that the Rule did not apply to violations of the right of allocution on dir ect appeal, and thus the appropriate remedy for such violations was automatic resentencing.

In sum, from our review of Green, Van Hook, and Hill, we conclude that in deciding these cases nearly four decades ago, the Supreme Court was of the view that a sentence imposed without the trial court's having personally afforded the defendant the right of allocution was gr ounds for remand for resentencing on direct appeal. And while the right of allocution is deeply rooted in our legal tradition and highly respected, nonetheless it is neither constitutional nor jurisdictional, and thus the defendant faced a difficult time in collaterally attacking his sentence based on a violation of this right.

Accordingly, it is not surprising that in United States v. Allegrucci, 229 F.2d 811 (3d Cir. 1962), we remanded for resentencing after the district court had failed to personally address the defendant prior to sentencing and inquire if he wished to make a statement. Id. at 815. Before sentencing the defendant, the trial court had simply told defendant's counsel to "go ahead," which clearly did not measure up to the standard enunciated in Green. Id. Following Green, we automatically vacated and remanded for r esentencing without any discussion of harmless err or, plain error, or prejudice to the defendant. Id.

Since its decision in Hill in 1962, the Supr eme Court has said little regarding the right of allocution,3 but the federal

_____

3. The Court has mentioned the right four times in passing. Groppi v. Leslie, 404 U.S. 496, 501 (1972); United States v. Behrens, 375 U.S. 162,

courts have been quite active in interpreting this right and in fashioning various tests for determining on direct appeal when a violation of the right should result in resentencing.4

_____

165 (1963); Andrews v. United States, 373 U.S. 334, 336-37 (1963); Machibroda v. United States, 368 U.S. 487, 489 (1962). In addition, the Court discussed the right in some detail in McGautha v. California, 402 U.S. 183 (1971), but did little more than r epeat what had already been said in Green and Hill. McGautha, 402 U.S. at 217-20; id. at 228 n.7, 236-38 (Douglas, J., dissenting).

4. We detect at least five differ ent tests that have gained favor in our sister circuit courts of appeal. Some courts have resolutely clung to the idea that when the right of allocution is violated, the defendant on direct
appeal is always entitled to remand for r esentencing. E.g., United States v. Myers, 150 F.3d 459, 463-65 (5th Cir. 1998); United States v. Walker, 896 F.2d 295, 301 (8th Cir. 1990). On the opposite end of the spectrum are those courts that hold that the defendant is not entitled to resentencing unless he can identify specific statements on appeal that he would have made at sentencing that likely would have changed the trial court's determination of his sentence. E.g., United States v. Leasure, 122 F.3d 837, 841 (9th Cir. 1997). Several others have concluded that resentencing is not required if the defendant has already received the lowest possible sentence -- i.e., if he was sentenced at the bottom of the applicable Sentencing Guidelines range and he had not argued in the trial court that the Guidelines range was incorr ect (by, for example, moving for a downward departure or a decr ease in either the offense-level or criminal history category, or by ar guing against an upward departure or an increase in the of fense-level or criminal history category). E.g., United States v. Riascos-Suarez, 73 F.3d 616, 627 (6th Cir. 1996); United States v. Lewis, 10 F.3d 1086, 1092 (4th Cir. 1993); United States v. Mejia, 953 F.2d 461, 468 (9th Cir. 1992). Similarly, some courts have fashioned a test that, on the sur face, appears to hold that resentencing is not necessary if the defendant has already received the lowest possible sentence. However, in r eality this particular test always dictates resentencing because these courts have engaged in open-ended speculation about what grounds for a lesser sentence the defendant might have argued to the court during his allocution had he been given the opportunity, even if such grounds had not been raised at any other point in the litigation. E.g., United States v. Medrano, 5 F.3d 1214, 1219 (9th Cir. 1993); see also United States v. Cole, 27 F.3d 996, 999 (4th Cir.
1994) (remanding for resentencing based on speculation about what legal grounds the defendant might have raised during his allocution, even though he apparently did not argue such grounds on appeal). Still others have adopted the rather vague standar d that resentencing is

The catalyst behind much of this activity is that in the years following Green, Van Hook, and Hill, the Supreme Court has increasingly considered the concepts of harmless error and plain error, set forth in Rule 52, as necessary inquiries on direct appeal whenever a defendant alleges that his rights were violated in the district court. (In this appeal, we are, of course, specifically concerned with the concept of plain error -- as opposed to har mless error -- because Adams did not raise an objection in the District Court). This emphasis on Rule 52 leads us to question whether we should reassess the seemingly simple directive of Green, Van Hook, and Hill (and Allegrucci) that on direct appeal the defendant is automatically entitled to resentencing when he is not affor ded his right of allocution. We think that such a reexamination is appropriate.

As noted above, Rule 52(b) was adopted in 1944 and sets forth the standard for plain error r eview. Although Rule 52(b) apparently did nothing more than codify the standard laid down by the Supreme Court in United States v. Atkinson, 297 U.S. 157, 160 (1936), see United States v. Young, 470 U.S. 1, 7 (1985), nevertheless it was unclear, at

_____

appropriate only if failure to do so would result in "manifest injustice." E.g., United States v. Rodriguez-Velasquez, 132 F.3d 698, 700 (11th Cir. 1998).

Adding to the complexity of these various standar ds is the circumstance that sometimes a single court has adopted more than one test, without acknowledging the conflict. This situation is perhaps the most pronounced in the Ninth Circuit. Compare Leasure, 122 F.3d at 841 (holding resentencing inappropriate unless the defendant can identify specific statements on appeal that he would have made at sentencing that likely would have impacted his sentence) and Mejia, 953 F.2d at 468 (holding resentencing not warranted if the defendant already received the lowest possible sentence under the Sentencing Guidelines) with Medrano, 5 F.3d at 1219 (adopting a rule that in practice requires automatic resentencing, because even though the defendant in the trial court had raised no grounds for a lower sentence, the court nevertheless remanded for resentencing based on speculation about what the defendant might have said during allocution had he been given the chance) and United States v. Navarro-Flor es, 628 F.2d 1178, 1184 (9th Cir. 1980) (automatically remanding for resentencing when the right of allocution is violated).

11

least until recently, whether on direct appeal Rule 52(b) should apply to every conceivable err or to which the defendant failed to object, or whether a class of rights existed whose violation was considered so serious that Rule 52(b) should be bypassed in favor of automatic r eversal. As explained above, Green, V an Hook, and Hill would appear to place the right of allocution within this pr oposed class, because none of these opinions even mentions Rule 52 at all.

However, in United States v. Olano, 507 U.S. 725 (1993), the Supreme Court strongly indicated that no such class of rights exists. The Court first observed that "[n]o procedural principle is more familiar . . . than that a constitutional right, or a right of any other sort, may be for feited in criminal as well as civil cases by the failur e to make timely assertion of the right before a tribunal having jurisdiction to determine it." Id. at 731 (quoting Yakus v. United States, 321 U.S. 414, 444 (1944) (internal quotation marks omitted)). In a criminal matter, the Court continued, "Federal Rule of Criminal Procedure 52(b), which governs on appeal from criminal proceedings, pr ovides a court of appeals a limited power to correct [for feited] errors." Id. The Court then strongly suggested that all for feited errors in a criminal proceeding are subject to Rule 52(b) analysis when it stated broadly that "[i]f a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an `err or' within the meaning of Rule 52(b) despite the absence of a timely objection." Id. at 733–34. In making this determination, the Court carefully differentiated between waiver and forfeiture: waiver is the "intentional relinquishment or abandonment of a known right," while forfeiture is the "failure to make the timely assertion of a right," or in other wor ds, the failure to object to an alleged violation. Id. at 733.

If, in the wake of Olano, there wer e any doubt about the universal applicability of Rule 52(b) on dir ect appeal of a criminal conviction when no objection was raised in the district court, this doubt was erased by Johnson v. United States, 520 U.S. 461 (1997). In Johnson, the defendant argued that the constitutional error in her trial proceedings, to which she had not objected, was so serious that Rule

12

52(b) did not apply, and thus she was entitled to automatic reversal. Id. at 466. The Court flatly rejected that argument, specifically stating that "the seriousness of the error claimed does not remove consideration of it fr om the ambit of the Federal Rules of Criminal Procedur e." Id. Moreover, the Court continued, Rule 52 "by its terms governs direct appeals from judgments of conviction in the federal system, and therefore governs this case." Id. Consequently, the Court had "no authority" to carve out an exception to Rule 52(b) based simply on the gravity of the char ged error. Id.

Thus we are compelled to arrive at the conclusion that Adams' claim of error is subject to Rule 52(b) plain error analysis.5 As such, Olano provides the proper framework for

_____

5. It is also worth noting that had Adams raised an objection in the District Court, he still would not be entitled to automatic reversal, but instead his claim would be subject to Rule 52(a) har mless error review. The Supreme Court's opinion in Johnson (even though it dealt with plain error and not harmless error) says as much when it explains, as noted above, that Rule 52 "by its terms gover ns direct appeals from judgments of conviction in the federal system." Johnson , 520 U.S. at 466. More specifically, the Court has repeatedly declar ed that Rule 52(a) harmless error inquiry applies whenever the defendant has raised an objection in the district court. E.g., Neder v. United States, 527 U.S. 1, 7 (1999) (stating that Rule 52(a) "by its terms applies to all errors where a proper objection is made at trial") (emphasis in original); Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988) (applying Rule 52(a) harmless error review to a claim of prosecutorial misconduct, and observing that "[i]t follows that Rule 52 is, in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions"); United States v. Lane, 474 U.S. 438, 448 n.11 (1986) (rejecting the notion that Rule 52(a) can be selectively applied, explaining that "on its face, Rule 52(a) admits of no broad exceptions to its applicability. Any assumption that once a `substantial right' is implicated it is inher ently `affected' by any error begs the question raised by Rule 52(a)"). The only exception to the applicability of harmless error r eview is in the "very limited class" of "structural" constitutional errors that"infect the entire trial process" and therefore are so serious that they can never be deemed harmless. E.g., Neder, 527 U.S. at 8 (describing the class of structural constitutional errors, which includes complete denial of counsel, a biased trial judge, racial discrimination in selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable-doubt jury instruction).

analyzing Adams' claim. Before we can grant Adams relief, the District Court must have committed (1) "err or" (2) that is "plain" (3) that "affect[s] substantial rights." Olano, 507 U.S. at 732. If all three of these conditions are met, we "ha[ve] [the] authority to" corr ect the District Court, "but [we are] not required to do so," because Olano makes clear that we should exercise our discretion to correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Id. at 735–36. This involves an examination of the seriousness of the error in the context of the entire case. Johnson, 520 U.S. at 469; see also Young, 470 U.S. at 15–16 (explaining that reviewing courts must assess an alleged err or "against the entire record" so as to deter mine whether such error "seriously affect[s] the fair ness, integrity or public reputation of judicial proceedings").

Normally, in order for an error to "affect substantial rights" under the third prong of the Olano test, the error must have been "prejudicial" –– in other words, "[i]t must have affected the outcome of the district court proceedings." Olano, 507 U.S. at 734. It is the defendant who bears the burden of persuasion with respect to pr ejudice. Id. However, the Supreme Court has cautioned that some errors to which no objection was made should be "presumed prejudicial" if the defendant cannot make a specific showing of prejudice. Id. at 735. Furthermore, there may be a special category of forfeited errors that can be corrected "regardless of their effect on the outcome."6 Id.

Notwithstanding this guidance, the federal cir cuit courts of appeal have been inconsistent in their application of Olano when reviewing violations of the right of allocution on direct appeal to which no objection was raised in the district court.7 As explained above, in our view, a fair

_____

6. Here, the Court is apparently r eferring to "structural" constitutional errors. Johnson, 520 U.S. at 468–69.

7. For example, some courts have applied har mless error –– rather than plain error –– review, even when no objection was raised in the district court. E.g., United States v. Patterson, 128 F.3d 1259, 1260–61 (8th Cir. 1997); United States v. Carper, 24 F .3d 1157, 1162 (9th Cir. 1994).

reading of Olano dictates that when a defendant fails to object to a violation of his right of allocution, his claim on appeal is reviewed for plain error -- which requires the defendant to make a specific showing of pr ejudice,8 unless he can show that the error should be pr esumed prejudicial, or that the error belongs in a special category of errors that should be corrected regardless of pr ejudice (i.e., the category of structural errors).

We recently had the opportunity to addr ess a violation of the right of allocution in United States v. Beckett, 208 F.3d 140 (3d Cir. 2000). Following the lead of the United States Court of Appeals for the Fourth Circuit in United States v. Lewis, 10 F.3d 1086 (4th Cir. 1993), we held that "even were we to assume that [the defendant] was denied the right of allocution," he was not entitled to automatic resentencing because he was not prejudiced by the denial in light of the fact that "he was sentenced to the

_____

Others have cited the Olano plain err or framework, but have implemented it in a curious fashion by ostensibly placing the burden of proving prejudice on the defendant, yet in fact implicitly presuming prejudice whenever the defendant did not r eceive the lowest possible sentence under the Sentencing Guidelines. E.g. , United States v. Cole, 27 F.3d 996, 999 (4th Cir. 1994). Still others appear to have ignored Olano altogether. E.g., United States v. Myers, 150 F.3d 459, 462–64 (5th Cir. 1998); United States v. Rodriguez–Velasquez, 132 F.3d 698, 700 (11th Cir. 1998); United States v. Riascos–Suarez, 73 F.3d 616, 627 (6th Cir. 1996); United States v. Alba Pagan, 33 F .3d 125, 129–30 (1st Cir. 1994); United States v. Maldonado, 996 F.2d 598, 599 (2d Cir. 1993).

8. Surprisingly, our research r eveals that only two opinions in the federal
courts of appeal, neither of which is a majority opinion, appear to implement the Olano framework in this manner by placing the burden of demonstrating prejudice on the defendant. Myers, 150 F.3d at 465–67 (Davis, J., concurring) (placing the burden of persuasion with respect to prejudice on the defendant, and noting that the defendant cannot satisfy this burden simply by pointing out that he did not receive the lowest possible sentence under the Sentencing Guidelines); Cole, 27 F.3d at 999–1002 (Luttig, J., dissenting) (same). However , even these opinions are arguably incomplete, because they fail to address the possibility that the defendant might be explicitly relieved of the burden of proving prejudice when a trial court violates the right of allocution, and instead prejudice may be presumed. See infra  pp. 17–19.

15

[Sentencing] Guidelines minimum" sentence. Beckett, 208 F.3d at 148.

While the ultimate result in Beckett is sound, nevertheless our reasoning is somewhat cryptic due in part to its brevity. We did not mention Olano (or Johnson), nor did we use the term "plain error ," even though it is clear from the opinion that the defendant had raised no objection to the trial court's failure to observe the right of allocution at sentencing. And we did not refer to our earlier decision in Allegrucci -- in which we automatically vacated and remanded for resentencing based on a violation of the defendant's right of allocution -- and ther efore one could argue that our ruling in Beckett cr eates a conflict in our circuit precedent.

Significantly, however, we do not consider Beckett as an improper departure from our cir cuit precedent in Allegrucci. In Beckett, we considered prejudice to the defendant rather than automatically remanding for resentencing. Accordingly, we view Beckett as r eflective of intervening Supreme Court case law (such as Olano and Johnson) that has highlighted the presence and importance of applying Rule 52 on direct appeal. As such, Beckett  has superceded Allegrucci. See, e.g., Reich v. D.M. Sabia Co., 90 F.3d 854, 858 (3d Cir. 1996) (observing that "[a]lthough a panel of this court is bound by, and lacks authority to overrule, a published decision of a prior panel, a panel may r eevaluate a precedent in light of intervening authority and amendments to statutes or regulations"); see also Patterson v. McLean Credit Union, 491 U.S. 164, 173 (1989) (explaining that precedent may be overruled when intervening development of law has "weakened the conceptual underpinnings" of prior precedent). Still, we will attempt to flesh out what we did not specifically state in Beckett, and therefore we will analyze Adams' claim within the Olano plain error framework.

Applying this framework, we first find, as explained above, that the District Court committed "err or" when it failed to personally address Adams prior to sentencing. In light of the District Court's clear duty to do so, e.g., Green, 365 U.S. at 305, this error was "plain," because it was "clear" or "obvious," Olano, 507 U.S. at 734. Next, we must

16

inquire whether this failure affected Adams' "substantial rights." Olano, 507 U.S. at 734. Nor mally, this would require Adams to show that the trial court's error was prejudicial, or in other words, that it "affected the outcome of the district court proceedings." Id.

We note that this would be an onerous burden for Adams to meet. In order to prove that the err or actually "affected the outcome of the district court proceedings," Adams would have to point to statements that he would have made at sentencing, and somehow show that these statements would have changed the sentence imposed by the District Court. In this context, as the First Circuit observed in United States v. Alba Pagan, 33 F.3d 125 (1st Cir. 1994), "the impact of the omission on a [judge's] discretionary [sentencing] decision is usually enormously difficult to ascertain."[9] Id. at 130. But as the Supreme Court explained in Olano, there may be some err ors "that should be presumed prejudicial if the defendant cannot make a specific showing of prejudice." Olano , 507 U.S. at 735. Thus the question for us becomes: should we presume prejudice when a district court violates a defendant's right of allocution?

Given the nature of the right and the difficulty of proving prejudice from its violation, we conclude that we should presume prejudice when a defendant shows a violation of the right and the opportunity for such a violation to have played a role in the district court's sentencing decision. Adams has met that standard here. W e have, of course, already determined that his right of allocution was violated. And the opportunity existed for this violation to have played a role in the District Court's sentencing decision, because Adams was sentenced roughly in the middle of the

_____

9. This "enormous difficulty" at least partially explains why several courts have implicitly presumed pr ejudice if the defendant has not received the lowest possible sentence under the Sentencing Guidelines. E.g., United States v. Riascos–Suarez , 73 F.3d 616, 627 (6th Cir. 1995); United States v. Cole, 27 F.3d 996, 999 (4th Cir. 1994); United States v. Medrano, 5 F.3d 1214, 1219 (9th Cir . 1993). Without this presumption, defendants would face an uphill battle in their attempt to obtain relief for violations of the right of allocution –– a r esult that few courts have
been willing to tolerate.

17

applicable Guidelines range, supra p. 3, and therefore the District Court clearly retained discretion to grant Adams a lower sentence.

While this is the most obvious way in which the District Court retained discretion to give Adams a lower sentence, it is by no means the only way. For instance, the District Court also retained the discretion, had Adams spoken on his own behalf, to reconsider its rejection of defense counsel's earlier arguments against a two-level upward adjustment for making a threat during one of the bank robberies, against the criminal history category as over-representing Adams' criminal activity, and in favor of a downward departure based on substandar d confinement conditions. Moreover, as a general matter, we believe that the proper standard for us to follow is that an opportunity exists for a violation of the right of allocution to have played a role in the district court's sentencing decision -- even when a defendant is sentenced at the bottom of the Guidelines range thought to be applicable -- whenever a searching review of the district court r ecord reveals that there are any disputed facts at issue at sentencing, or any arguments raised in connection with sentencing, that if resolved in the defendant's favor would have r educed the applicable Guidelines range or the defendant's ultimate sentence.10

Our conclusion that we should presume pr ejudice here, where Adams' right of allocution was violated, follows

_____

10. In adopting this standard, we explicitly reject the reasoning employed in United States v. Medrano, 5 F.3d 1214 (9th Cir. 1993), in which the Ninth Circuit engaged in open-ended speculation about what grounds for a lesser sentence the defendant might have ar gued to the trial court during his allocution had he been given the opportunity, even when such grounds had not been raised at any other point in the district court proceedings. Id. at 999. We think the better approach is that when the defendant is sentenced at the bottom of a Guidelines range, there is no opportunity for a violation of the right of allocution to have played a role
in the district court's sentencing decision unless there were disputed facts actually at issue at sentencing, or ar guments made in connection with sentencing, that if resolved in the defendant's favor would have reduced the applicable Guidelines range or the defendant's ultimate sentence.

18

logically from Supreme Court precedent. As the Court explained in Green, the right of allocution is premised on the idea that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." Green, 365 U.S. at 304. Thus, denying Adams his right of allocution was tantamount to denying him his most persuasive and eloquent advocate. And the District Court was likewise denied the opportunity to take into consideration Adams' unique perspective on the circumstances relevant to his sentence, delivered by his own voice. In such a situation, we find it appropriate to presume prejudice because the sentencing process itself was rendered presumptively unreliable. See, e.g., id. at 304–05; cf., e.g., United States v. Cronic, 466 U.S. 648, 659 (1984) (observing that courts should presume prejudice when the adversary process itself has been rendered presumptively unreliable).

Furthermore, while the right of allocution is not constitutional, nonetheless it is ancient in origin, and it is the type of important safeguard that helps assure the fairness, and hence legitimacy, of the sentencing process. See, e.g., Green, 365 U.S. at 304–05; see also United States v. Myers, 150 F.3d 459, 463–64 (5th Cir. 1998) (observing that the practice of allowing a defendant to speak before sentencing has both functional and symbolic meaning that lends legitimacy to the sentencing process); Alba Pagan, 33 F.3d at 129 (noting that the right of allocution "is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances," and that the right "has value in terms of maximizing the perceived equity of the process"). When this legitimacy is called into question –- as it was when the District Court did not personally address Adams and inquire if he wished to speak on his own behalf–- prejudice presumptively follows.

Finally, having concluded that the forfeited error in this case "affects substantial rights," we must address the last prong of the Olano framework. We should exercise our discretion to correct the District Court's error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 736.

19

As explained above, the legitimacy of the sentencing process was called into question when Adams' right of allocution was violated. Moreover, a defendant's allocution plays a crucial part in the sentencing process, and thus a denial of this right is not the sort of "isolat[ed]" or "abstract" error that we might determine does not impact the "fairness, integrity or public reputation of judicial proceedings." Young, 470 U.S. at 15-16. Therefore, we have little difficulty concluding that it is appr opriate for us to exercise our discretionary authority to correct the error in this case, and that Adams must be resentenced.

In sum, we hold that the District Court committed plain error that should be corrected when it failed to personally address Adams prior to sentencing, in violation of Federal Rule of Criminal Procedure 32(c)(3)(C). Adams need not point to specific prejudice resulting fr om the District Court's error, because here we consider the trial court's violation of Rule 32(c)(3)(C) as one of those situations in which prejudice should be presumed. Mor eover, as a general matter, we conclude that prejudice should be presumed whenever the opportunity exists for this violation to have played a role in the district court's sentencing decision. Our resolution of this case follows naturally from Supreme Court jurisprudence and is consistent with our previous ruling in Beckett.

In accordance with the foregoing, the judgment of conviction and sentence of the District Court enter ed on March 17, 2000, will be vacated and the case r emanded for resentencing.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

20