

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2005

# USA v. Cooley

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1592

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Cooley" (2005). *2005 Decisions.* Paper 1143.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1143

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-1592

UNITED STATES OF AMERICA

v.

JOHN COOLEY,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(Crim. No. 02-40E)
District Judge: Hon. Sean J. McLaughlin

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 5, 2005

Before: McKEE, SMITH and VAN ANTWERPEN

(Opinion filed: May 24, 2005)

OPINION

McKEE, Circuit Judge.

John Cooley appeals from a judgment of sentence and conviction. For the reasons that follow, we will affirm the judgment of conviction. However, we will vacate the sentence and remand for resentencing pursuant to *United States v. Booker*, __ U.S. __, 125 S.Ct. 738 (2005). *See United States v. Davis*, __ F.3d __, 2005 WL 976941 (3d Cir. April 28, 2005).

1

## I.

Because we write only for the parties, we recite only the facts and procedural history that are necessary for the disposition of this appeal. On December 10, 2002, a grand jury returned a one-count indictment, charging that from January 1992 and continuing until December 2002, Cooley conspired to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846. The jury found him guilty and, thereafter, the district court sentenced him to life imprisonment. In his appeal, Cooley argues that the district court erred in certain evidentiary rulings and in sentencing him to life imprisonment under the Sentencing Guidelines.

## II.

Cooley makes two challenges to the district court's evidentiary rulings. First, he argues that the district court erred by excluding as hearsay the testimony of Ricky Pulliam that Cooley tried to introduce on the last day of trial. Pulliam knew Curas Henry, Henry was Cooley's former lover and, according to the government, one of the many people Cooley supplied crack cocaine to. Pulliam knew that Henry had tried to borrow money from Cooley. Cooley either refused to loan the money or reneged on the deal. In any event, Pulliam testified that Henry told him, with respect to Cooley: "I can't stand that son of a bitch." The government objected, claiming that the testimony was hearsay and the district court sustained the objection. Cooley argues that ruling was error. Henry's statement is hearsay because it is an out-of-court statement offered to prove the truth of

2

Henry's assertion that she could not stand Cooley. Arguably, the statement should have been admitted under the state of mind exception to the hearsay rule. However, even if the district court erred by not admitting the statement under that exception, the error was harmless. A non-constitutional trial error does not "warrant reversal in circumstances where it is highly probable that the error did not contribute to the judgment." *United States v. Mathias*, 264 F.3d 321, 342 (3d Cir. 2001) (citation and internal quotations omitted). Although the government has the burden of demonstrating this high probability, *United States v. Adams*, 252 F.3d 276, 281 (3d Cir. 2001), it does not have to disprove every reasonable possibility of prejudice. *Mathias*, 264 F.3d at 342 (citation omittted).

Here, it is clear that the exclusion of Pulliam's testimony did not contribute to the jury's verdict. Henry was not a key or critical witness against Cooley. There was overwhelming evidence from other witnesses that Cooley was a major crack cocaine trafficker and that he received large amounts of money from that trafficking.

Cooley's second evidentiary argument is that the district court erred by allowing the government to introduce the testimony of John Vergotz. Vergotz testified that his business is located next door to Cooley's house and that he had known Cooley for 15 years. Cooley frequented his business. Vergotz testified that Cooley had been employed for only about 4 years during their 15-year friendship. Vergotz was trying to purchase a new home, but needed an additional $10,000 for the closing. He discussed the situation

3

with his secretary one day while Cooley was present in his shop, although Vergotz did not directly discuss it with Cooley.

Cooley later invited Vergotz to his house. When Vergotz arrived, Cooley gave him $10,000 in cash. The actual transfer took place in Cooley's car. Vergotz later repaid Cooley.

Cooley argues that Vergotz' testimony was inadmissible because it was never linked to a particular drug transaction. He is wrong. A defendant's access to unexplained or unaccounted for wealth is strong circumstantial evidence of involvement in illegal activity. *United States v. Chandler*, 326 F.3d 210, 215 (3d Cir. 2003). Thus, possession of large amounts of cash with evidence of narcotics trafficking is generally relevant and admissible. *United States v. Newton*, 891 F.2d 944, 948 (1st Cir. 1989). "The touchstone of the admissibility inquiry is not the amount of money in the defendant's possession, but whether defendant's failure to account for its source tends to support the government's claim that the money was obtained through illegitimate means." *Chandler*, 326 F.3d at 215. Moreover, the government does not have to demonstrate a connection between the funds in question and a specific illegal transaction. *United States v. Jackson-Randolph*, 282 F.3d 369, 379 (6th Cir. 2002).

Here, the government's evidence established that from January of 1992 until December of 2003, Cooley distributed multiple kilograms of crack. Numerous witnesses testified that Cooley was paid hundreds of thousands of dollars for that crack. Several

witnesses testified that Cooley transported bags filled with cash to his sister's home in Virginia for safekeeping. Vergotz testified that Cooley had only two jobs and was employed for approximately 4 years out of the 15 years he had known Cooley. The circumstances surrounding the loan and the nature of the transaction was certainly probative of Cooley's involvement in drug trafficking.

For the above reasons, we will affirm the judgment of conviction.

### III.

At sentencing, the district court found that Cooley trafficked in over 1.5 kilograms of crack cocaine, that he was the leader or organizer of a criminal activity that involved more than 5 criminal participants, that he possessed firearms during the conspiracy and that he attempted to obstruct the administration of justice. Pursuant to the Sentencing Guidelines, the district court sentenced Cooley to life imprisonment – a sentence beyond the maximum for the crime of conviction.

In his appeal, Cooley argues that the district court's sentence violates *United States v. Booker*, __ U.S. __, 125 S.Ct. 738 (2005). Under *Booker*, mandatory enhancement of a sentence under the Sentencing Guidelines based on facts found by the court and not a jury, violates the Sixth Amendment. Thus, after *Booker*, the Sentencing Guidelines are "effectively advisory." *Id*. at 757. Accordingly, district courts will now consider the applicable advisory Guidelines in addition to the factors set forth in 18 U.S.C. § 3553(a). *Id*. at 764-65. *Booker* is applicable to all cases on direct review. *Id.* at 769.

Cooley did not raise a Sixth Amendment challenge to his sentence in the district court and *Booker* was decided after he was sentenced. Nonetheless, pursuant to our recent decision in *United States v. Davis*, __ F.3d __, 2005 WL 976941 (3d Cir. April 28, 2005), we will remand for resentencing pursuant to *Booker*.

_____