PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2554
_____

UNITED STATES OF AMERICA

v.

MATTHEW PACKER,
                                        Appellant
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-20-cr -00193-001)
District Judge:  Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 11, 2023

Before:   JORDAN, BIBAS and PORTER, *Circuit Judges*

(Filed: September 26, 2023)
_____

Keith M. Donoghue
Samantha K. Drake
Federal Community Defender Office
    for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center – Suite 540 West
Philadelphia, PA  19106
        *Counsel for Appellant*

Everett Witherell
Office of United States Attorney
615 Chestnut Street – Suite 1250
Philadelphia, PA   19106
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Matthew Packer appeals the District Court's revocation of his supervised release and his resulting sentence of two years' imprisonment. He argues that the District Court denied him his right of allocution by announcing the sentence it intended to impose before allowing him an opportunity to speak. Neither Packer nor his counsel raised an objection at the sentencing hearing. We will affirm.

## I.    BACKGROUND

In May 2017, Matthew Packer was convicted of conspiracy to distribute and possess with intent to distribute

five grams or more of methamphetamine, and a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and § 846. The District Court sentenced him to 60 months' imprisonment followed by five years' supervised release.[1]

After Packer's release from prison,[2] the District Court modified the conditions of Packer's supervised release on three occasions – first in November 2020, next in April 2021, and again in June 2022 – each time in response to admissions by Packer that he continued to abuse methamphetamine. On the first occasion, the Court ordered forty-five days' home detention; on the second, it ordered ninety days' home detention; and on the third, it ordered Packer's placement in a halfway house for 60 days.

Then, in July 2022, his former girlfriend, Nicole Jones, forwarded to a probation officer threatening voicemail messages that Packer had sent to her.[3] The next day, the

---

[1] Packer was indicted and sentenced in the District of Delaware, but following his release from prison, jurisdiction over his supervised release was transferred to the Eastern District of Pennsylvania.

[2] Packer's supervised release began in March 2020. The record does not contain information regarding the Bureau of Prison's calculations allowing for his early release, but that has no bearing here.

[3] The government refers to Nicole Jones as "Nicole Johnson" in its briefing, but both the record and Packer's briefing consistently use the surname "Jones."

probation office petitioned the District Court for a revocation of Packer's supervised release because he had committed the "crime of terroristic threats," a first-degree misdemeanor punishable by up to five years' imprisonment under Pennsylvania law, 18 Pa. Cons. Stat. § 2706. (J.A. at 18.)

The District Court held a revocation hearing, at which the government introduced four voicemail messages into evidence.[4] In them, Packer can be heard threatening to strangle and kill Jones. Following testimony by Jones and the probation officer, Packer testified in his own defense. He justified his behavior on the grounds that Jones was using drugs in his home, stealing his disability benefits, and having an affair with another man. Packer also testified that Jones had no reason to believe that he would hurt her.

Following the presentation of evidence, the Court found that Packer had violated his supervised release. Based on the violation and Packer's criminal history, the Court determined that the advisory sentencing guidelines recommended a term of 21 to 27 months' imprisonment. Then, before inviting Packer to speak, the District Court stated its intention to impose a sentence of 24 months' imprisonment. Only afterwards did Packer have the opportunity to address the Court.

The transcript reads as follows:
THE COURT: All right. It's clear to this Court that Mr. Packer, in fact, violated the terms and

---

[4] The government introduced a recording of a fifth voicemail message, one that Packer left for a third party just before the hearing, in which Packer admits that he had threatened Jones.

4

conditions of his supervised release. The Court has no question about that, based upon what I've heard here this afternoon. So, under the circumstances, I am finding that the defendant did, in fact, violate the terms and conditions of supervised release and the question becomes, what is a reasonable disposition of the matter under those circumstances? The guidelines here are at twenty-one to twenty-seven months. I believe that under the circumstances, the Court should impose a sentence of twenty-four months for the violations of the terms and conditions of supervised release. I also believe that after that has been served, no supervised release should follow. So, under the circumstances, that's how I am going to dispose of the situation. Counsel, anything further?

MR. WILSON: Your Honor, do you wish me to give my client his appellate rights?

THE COURT: Excuse me?

MR. WILSON: Do you -- do you wish me to give my client his appellate rights or would you -- your Honor –

THE COURT: No, I -- I'm going to invite your client up here and he can say anything he wishes. Mr. Packer, I am going to impose that sentence on you in a few minutes, before I do that, I'll hear anything you want to say to me.

THE DEFENDANT: There's really nothing I can say, it's not one of my -- you know -- finer moments, but -- ah -- I would never hurt her and she knows that, that's all I can say.

THE COURT: All right. The Court has determined as I've indicated that you are, in fact, in violation of -- of the terms and conditions of supervised release. Supervised release is revoked. You are remanded to the custody of the Bureau of Prisons for a period of twenty-four months. At the conclusion of that sentence, no supervised release will follow.

(J.A. at 96-98.)

Following entry of the District Court's sentencing order, Packer timely appealed.

## II. DISCUSSION[5]

At a revocation proceeding, the defendant is entitled to "an opportunity to make a statement and present any information in mitigation." Fed. R. Crim. P. 32.1(b)(2)(E). Although not a constitutional right, the defendant's right to make such a statement before sentencing, known as an allocution, has a long and respected history at common law. *Green v. United States*, 365 U.S. 301, 304 (1961) (plurality

---

[5] The District Court had jurisdiction under 18 U.S.C. §§ 3583(e) and 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

opinion). The purpose of an allocution is threefold: "(1) to allow the defendant to present mitigating circumstances, (2) to permit the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence, and (3) to preserve the appearance of fairness in the criminal justice system." *United States v. Ward*, 732 F.3d 175, 181-82 (3d Cir. 2013); *see also Green*, 365 U.S. at 304 ("The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.").

If a district court has denied a defendant his right of allocution, we will generally remand for resentencing. *United States v. Adams*, 252 F.3d 276, 282 (3d Cir. 2001). But, if the defendant did not raise an appropriate objection at his sentencing hearing, we review the district court's actions for plain error. *Id.* at 278, 285. That is the case here. Because Packer did not object to the District Court's pre-allocution announcement of the intended sentence, the plain error standard applies.[6] To meet that standard, an appellant must prove that the district court erred, that the error was obvious, and that the error affected his substantial rights, that is, the error affected the outcome of the proceedings. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). If all three of those elements are established, there is a fourth element to consider, namely, whether we should exercise our discretion to award relief. *Id.* We exercise that discretion only in cases where the defendant is "actually innocent" or the error "seriously affect[s] the fairness, integrity or public reputation

---

[6] Packer acknowledges that "[t]he issue was not preserved." (Opening Br. at 2.)

of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732, 736 (1993) (alteration in original).

In *United States v. Adams*, we explained that "[g]iven the nature of the right [of allocution] and the difficulty of proving prejudice from its violation, … we should presume prejudice when a defendant shows a violation of the right *and* the opportunity for such a violation to have played a role in the district court's sentencing decision." 252 F.3d at 287. Such an opportunity exists when the district court "retained discretion to grant [the defendant] a lower sentence." *Id.*; *United States v. Scripps*, 961 F.3d 626, 634 (3d Cir. 2020) (quoting *Adams*, 252 F.3d at 287).

Even assuming Packer satisfies the first three elements of the plain error test, however, we decline to exercise our discretion under the fourth, as this is not a case in which the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (alteration in original). Although the District Court stated its intention to impose a 24-month sentence before hearing Packer's allocution, it allowed him the opportunity to speak, and Packer did not suggest any mitigating circumstances or distinctive characteristics that should be considered in his case. To his credit, he stated simply that he would never have hurt his ex-girlfriend and recognized that it was not one of his "finer moments." (J.A. at 97.) Nor has he said to us that there are additional mitigating factors or distinctive characteristics that he would have stated at his revocation proceeding had the District Court not prematurely forecasted the sentence to be imposed.

8

We disagree with Packer's contention that "allocution error [should be] recognized in all but extraordinary circumstances to warrant the exercise of remedial discretion under the plain-error standard's fourth prong." (Opening Br. at 17.) He cites three cases, which, he contends, have already so held, but he is wrong. It is true that, in *United States v. Paladino*, we said that "plain error analysis is satisfied where a violation of the right of allocution has been established." 769 F.3d 197, 201-202 (3d Cir. 2014); *see also United States v. Plotts*, 359 F.3d 247, 250 n.6 (3d Cir. 2004) (quoting *Adams*, 252 F.3d at 288) ("In *Adams,* we stated without qualification that denial of the right of allocution affects the 'fairness, integrity or public reputation of judicial proceedings.'"). But we understand our caselaw to mean that, when a trial court violates the right of allocution, an appellate court may choose to deem the fourth plain error factor satisfied, but it is not required to do so. Any other reading would strip appellate courts of their discretion and render the fourth step in plain error analysis a nullity. Indeed, *United States v. Adams*, the first case in this line of precedent, expressly held that violations of the right of allocution are not among the "special category of errors" that require automatic reversal, "i.e., the category of structural errors[.]" 252 F.3d at 286. Rather, they are analyzed "within the *Olano* plain error framework." *Id.* The government also rightly observes that the defendants in *Adams*, *Plotts*, and *Paladino*, unlike Packer, were not given any opportunity to address the trial court at their sentencing hearings.[7]

---

[7] Nothing in this opinion should be understood to undermine the importance of a defendant's right of allocution. District courts must continue to ensure that defendants have an opportunity to speak for themselves at sentencing, and that

In addition to his primary claim, Packer alleges two additional procedural errors. He argues that the District Court "failed to hear from counsel in mitigation," (Opening Br. at 18), and failed to "state reasons showing 'that the particular circumstances of the case have been given meaningful consideration within the parameters of § 3553(a).'" (Opening Br. at 21 (quoting *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc)).) Both arguments are unavailing.

As to the first, Packer has not accurately described the record. After the Court explained how it intended to rule, it asked, "Counsel, anything further?" (J.A. at 97.) In response, defense counsel did not provide any additional facts. Perhaps that was because, as the government surmises, "any mitigating facts were fully explored during the hearing, when [defense] counsel addressed Packer's conduct at length." (Answering Br. at 12.)

Packer's final argument, that the sentencing factors under § 3553(a) were given short shrift, is likewise without adequate foundation. A district court, when imposing a sentence for violating conditions of supervised release, "need not make explicit findings as to each of the § 3553(a) factors if the record makes clear that the court took the factors into account in sentencing." *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010) (internal quotations omitted). Rather, "[t]he record as a whole must make clear that the district judge 'has considered the parties' arguments and has a reasoned basis for

opportunity should come before sentence is pronounced, as the allocution may influence the sentence.

exercising his own legal decisionmaking authority.'" *United States v. Begin*, 696 F.3d 405, 411 (3d Cir. 2012) (quoting *Merced*, 603 F.3d at 215-16).

The record shows that the District Court considered the parties' arguments and had a reasoned basis for imposing the within-guidelines sentence. It heard testimony concerning, among other things, the nature of the supervised release offense, Packer's criminal history, his past substance abuse, and his justifications of his conduct. Additionally, the transcript makes clear that the Court reviewed the Probation Office's report and the sentencing guidelines. In a "conceptually simple" case such as this, that was sufficient. *See Rita v. United States,* 551 U.S. 338, 356 (2007) (holding that the "appropriateness of brevity or length" of a judge's statement of reasons "depends upon circumstances").

## III.   CONCLUSION

For the foregoing reasons, we will affirm.