

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-21-2006

# USA v. Wadley

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2009

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Wadley" (2006). *2006 Decisions.* Paper 865.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/865

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  04-2009

UNITED STATES OF AMERICA

v.

LODISE WADLEY,

Appellant

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
District Court No.:  03-CR-249
District Judge: The Honorable Clarence C. Newcomer

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 8, 2006

Before:  BARRY and SMITH, *Circuit Judges*,
and RODRIGUEZ*, District Judge**

(Filed: June 21, 2006)

OPINION

SMITH, *Circuit Judge*.

Lodise Wadley was indicted, tried and convicted by a jury, and sentenced for

---

**The Honorable Joseph H. Rodriguez, Senior District Judge for the District of New
Jersey, sitting by designation.

violations of: 21 U.S.C. § 841(a) (possession with intent to distribute cocaine base and distribution of cocaine base) (Counts Three and Four); 21 U.S.C. § 860 (distribution of and possession with intent to distribute cocaine base within 1,000 feet of a school) (Count Five); 18 U.S.C. § 924(c)(1) (carrying a firearm during and in relation to the drug trafficking crimes in Counts Three, Four, and Five) (Count Six); 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon) (Counts Seven and Ten); 21 U.S.C. § 856(a)(1) (maintaining a residence for the purpose of manufacturing, distributing, and using controlled substances) (Count Eight); 18 U.S.C. § 924(c)(1) (possessing firearms in furtherance of the drug trafficking crime in Count Eight) (Count Nine); and 18 U.S.C. § 931 (possession of body armor by a convicted felon) (Count Eleven).[1]

On appeal, Wadley raises nine issues: (1) whether the District Court erred by failing to order a competency hearing *sua sponte*; (2) whether there was sufficient evidence to support his convictions on Counts Three, Four, and Five; (3) whether there was sufficient evidence to support his conviction on Count Six; (4) whether there was sufficient evidence to support his conviction on Count Eight; (5) whether there was sufficient evidence to support his conviction on Count Nine; (6) whether the District Court erred by failing to suppress evidence discarded by Wadley on January 24, 2003; (7) whether the District Court erred by failing to suppress evidence obtained during execution

---

[1]Wadley's trial was conducted in two phases, with the jury first convicting Wadley on Counts Three, Four, Five, Six, Eight, and Nine (the drug-related charges), and then on Counts Seven, Ten, and Eleven (the charges related to possession of firearms and body armor by a convicted felon).

of a search warrant on May 7, 2003; (8) whether the District Court erred in instructing the jury; and (9) whether the District Court imposed an unreasonable sentence. Finding no merit to these issues, we will affirm Wadley's conviction and sentence.[2]

I.

The events leading to Wadley's convictions occurred on two separate occasions. On January 24, 2003, Philadelphia Police Officer Horace Gibson and several other veteran members of the 17th District Narcotics Enforcement Team were patrolling their district in Philadelphia, Pennsylvania, in an unmarked police car. Officer Gibson noticed Lodise Wadley, whom he knew, engaged in a conversation with another man. The other man handed Wadley cash, and Wadley handed the other man a small green object out of a baggie he was holding. These events occurred approximately 822 feet from the McDaniel Annex School.

Believing that he had observed a drug transaction, Officer Gibson told the other members of the team what he had seen. When the team members exited their car, Wadley and the other man fled. As the officers pursued the fleeing men, the man who had handed Wadley cash discarded a small green ziploc packet which was later found to contain 134 milligrams of cocaine base. During his flight, Wadley discarded a baggie which was later found to contain four green ziploc packets, each of which contained a similar amount of

---

[2]The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over Wadley's conviction pursuant to 28 U.S.C. § 1291. We have jurisdiction to consider the reasonableness of Wadley's sentence pursuant to 18 U.S.C. § 3742(a)(1). *See United States v. Cooper*, 437 F.3d 324, 327-28 (3d Cir. 2006).

cocaine base. Wadley then discarded a handgun which was later found to be a .45 caliber pistol, fully loaded and cocked. Wadley gave up his flight when his path was cut off by another officer, and he was taken into custody.

On May 7, 2003, ATF Special Agents went to 1531 South Taylor Street in Philadelphia with a warrant for Wadley's arrest and a warrant allowing them to enter 1531 South Taylor Street. After knocking, announcing their presence, and waiting, the ATF agents forced entry into the house. They found Wadley lying on a couch in the first-floor living room. As he was being handcuffed, he told the agents that there was at least one other person in the house. The agents then began a protective sweep of the house. Some of the agents found a second man on the second floor of the house. As the second man was being brought down to the first floor, other agents swept the first floor kitchen and laundry/mud room adjacent to the living room where Wadley was arrested. In the kitchen, one agent observed a clear plastic bag containing bullets on top of the refrigerator. In the laundry/mud room, the same agent observed what he identified as drug paraphernalia, a holster, and a bullet on top of a wooden table.

The agents then secured the premises and obtained a search warrant for 1531 South Taylor Street. Upon executing the search warrant, the agents found numerous utility bills and a mortgage for the property, all in Wadley's name. They also found Wadley's wallet and photo identification on a kitchen counter. In a kitchen cabinet above the wallet, they found four handguns, numerous cell phones, packaging material that could be used for drugs, and a notebook apparently containing tally sheets. On the same

4

shelf as two of the handguns and the tally sheets, they found a notarized document

bearing Wadley's signature. On the laundry/mud room table, they found thousands of

colored ziploc bags, digital scales subsequently found to possess cocaine base residue,

straws that had been cut in a way consistent with drug packaging, plates, and razor blades.

In a jacket in the laundry/mud room, they found $3400 in cash. In an emptied candy

container, they also found more cut straws and packaging materials, 15 bullets, white

powder, and correspondence bearing Wadley's name and address. Additional

ammunition and a bulletproof vest were also found in the house.

Prior to his trial, Wadley's counsel filed motions to suppress the evidence that

Wadley had discarded during his flight on January 24, 2003, as well as the evidence

obtained during the execution of the search warrant on May 7, 2003.[3] In October of 2003,

Wadley also filed a *pro se* motion challenging the jurisdiction of the District Court.

During the suppression hearing on February 24, 2004, Wadley insisted on renewing this

jurisdictional motion orally, and repeatedly interrupted the proceedings. After several

warnings, the District Court ordered Wadley's removal to a room equipped with video

and sound monitors for the remainder of the hearing.[4] The District Court eventually

---

[3]Wadley initially argued that the agents failed to properly knock, announce, and wait before entering the house, but on appeal argues only that their protective sweep of the house violated the Fourth Amendment, and thus that the evidence used to obtain the search warrant was improperly obtained.

[4]This pattern repeated itself during the trial, with Wadley reiterating his jurisdictional arguments, interrupting the District Court, refusing to behave properly, and ultimately being removed to a room where he could view the trial and communicate with his counsel remotely.

denied defense counsel's motions to suppress the evidence and Wadley's *pro se* motion with respect to jurisdiction.

Following the suppression hearing, the case proceeded immediately to trial. During Wadley's trial, in addition to the evidence described above, the government also offered an expert witness who testified that the evidence found in Wadley's house was consistent with using the property as a "bag house," a place where crack cocaine could be prepared and packaged for distribution. He also testified that the tally sheets found in the kitchen cabinet appeared to be drug tally sheets, and that drug dealers commonly used handguns like the ones found in the kitchen cabinet to protect their drugs and the proceeds from their drug sales. Finally, he also testified that the single bag discarded by the other man on January 24, 2003, and the four bags discarded by Wadley, were identical in size, shape, and color, and that each contained a "dime," a ten-dollar dose of crack cocaine.

During jury instructions, the District Court explained that the government had to prove the various elements of the counts related to possession with the intent to distribute beyond a reasonable doubt. With respect to Count Three, the District Court instructed that the first element was that "the defendant Wadley possessed cocaine base or crack, the controlled substance described in the indictment." With respect to Count Five, the District Court instructed that the first element was that "the defendant possessed the controlled substance described in the indictment." The District Court then further instructed: "You are instructed as a matter of law that cocaine base or crack is a

6

controlled substance. It is solely for you, however, to determine whether the government has proved beyond a reasonable doubt that the defendant possessed the cocaine base or crack with the intent to distribute it."

On February 26, 2004, Wadley was convicted on Counts Three, Four, Five, Six, Eight, and Nine. In the second phase of his trial, Wadley was convicted on Counts Seven, Ten, and Eleven.

At Wadley's sentencing hearing on January 20, 2005, the District Court noted that the guidelines range, given Wadley's total offense level and criminal history, was 262 to 327 months imprisonment, and that he was subject to additional mandatory consecutive sentences for Count Six (five years) and Count Nine (twenty-five years). The probation officer recommended a sentence at the bottom of the resulting range, 622 months. Wadley's counsel argued that he should be sentenced to no more than the mandatory minimum for Count Five (one year), plus the mandatory consecutive sentences for Count Six and Count Nine, and concurrent sentences on the remaining counts, for a total of 372 months. After considering arguments from both defense counsel and the government, the District Court set a sentence of 622 months imprisonment, six years of supervised release, a $700 special assessment, and a $2000 fine. Wadley filed a timely appeal.

II.

With respect to Wadley's competency, we find no error[5] in the District Court's

---

[5]Wadley argued that our standard of review for this issue should be plenary, but the government argued that because Wadley and his counsel failed to raise this issue before

failure to *sua sponte* order a competency hearing. Although Wadley repeatedly made arguably strange statements about the District Court's jurisdiction, and repeatedly engaged in disruptive behavior requiring his removal, we do not find that these events alone required the District Court to find that there was reasonable cause to believe that Wadley was "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he [was] unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

With respect to Counts Three, Four, and Five, we find that the evidence presented to the jury was sufficient to support Wadley's convictions.[6] Officer Gibson's testimony about the transaction that he witnessed, coupled with the identical packets dropped by Wadley and the other man respectively during their flight–which were subsequently found to contain cocaine base–and the evidence of large-scale cocaine base distribution using similar packets found in Wadley's house, provided sufficient evidence for the jury to conclude that the government had proved beyond a reasonable doubt that Officer

---

the District Court, our standard of review should be plain error. The panel has not reached a consensus with respect to whether our decisions in *United States v. Leggett*, 162 F.3d 237 (3d Cir. 1998), and *United States v. Renfroe*, 825 F.2d 763 (3d Cir. 1987), imply that our standard should be plenary, or rather whether our decision in *United States v. Adams*, 252 F.3d 276 (3d Cir. 2001), implies that our standard should be plain error. The panel need not decide this issue, however, because we hold that even on plenary review, the District Court committed no error.

[6]When reviewing the sufficiency of the evidence, we determine whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found that the government established all the elements of the crime beyond a reasonable doubt. *See United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998).

Gibson had witnessed Wadley possessing and distributing a detectable amount of cocaine base.

Similarly, we find that the evidence presented to the jury was sufficient to support Wadley's conviction on Count Six. The fact that Wadley was carrying a loaded and cocked .45 caliber pistol, that he discarded the pistol along with the drugs he was carrying during his flight, and that similar handguns were found near the other evidence of a cocaine operation in Wadley's house, provided sufficient evidence for the jury to conclude that the government had proved beyond a reasonable doubt that Wadley had carried the pistol during and in relation to the drug trafficking crime witnessed by Officer Gibson.

With respect to Count Eight, we again find that the evidence was sufficient to support Wadley's conviction. The documentary evidence found in the house established that Wadley owned the premises, and the location of his wallet, photo identification, personal mail, and documents bearing his name established that he had dominion and control over the areas in which the evidence relating to the drug operation was found. Accordingly, this evidence was sufficient for the jury to conclude that the government had shown beyond a reasonable doubt that Wadley had maintained this residence for the purpose of distributing cocaine base. *Cf. Jackson v. Byrd*, 105 F.3d 145, 148-50 (3d Cir. 1997).

With respect to Count Nine, the evidence was again sufficient to support Wadley's conviction. The fact that the firearms in question were loaded handguns, located near the

9

evidence indicative of a large-scale cocaine distribution operation, illegally possessed, and found at a time when substantial cash was in the house, provided sufficient evidence for the jury to conclude that the government had shown beyond a reasonable doubt that Wadley had possessed these firearms in furtherance of maintaining this residence for the purpose of distributing cocaine base. *See United States v. Sparrow*, 371 F.3d 851, 852-53 (3d Cir. 2003).

We also find that the District Court did not err[7] by declining to suppress the drugs and gun dropped by Wadley during his flight. Because Wadley had not yet been physically seized and had not yielded to a show of authority at the time that he discarded the drugs and gun, there was no seizure for Fourth Amendment purposes. *See California v. Hodari D.*, 499 U.S. 621, 626-28 (1991).

Similarly, the District Court did not err by declining to suppress the evidence found while executing the search warrant. The agents' original protective sweep of the adjacent kitchen and laundry room was justified as a precautionary measure in light of the possibility of an immediate attack from those areas, and it was limited to a cursory inspection of spaces where a person might be found. *See Maryland v. Buie*, 494 U.S. 325, 334-35 (1990). The agents then properly waited for a search warrant before conducting a more extensive search.

---

[7]In reviewing a district court's decision on a motion to suppress, we review factual findings for clear error and exercise plenary review over applications of law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

With respect to the jury instructions, we find no error in the instructions taken as a whole.[8]  Contrary to Wadley's assertion, the District Court did not direct a verdict with respect to whether Wadley possessed cocaine base.  Rather, viewing all of the instructions in context, the District Court properly instructed the jury that it would first have to find that Wadley possessed cocaine base, and then would further have to find that Wadley possessed the cocaine base with the intent to distribute it.

Finally, Wadley has not met his burden of showing that his sentence of 622 months was unreasonable.[9]  Wadley argues that his sentence was "plainly unreasonable," but he has not shown how the District Court failed to properly consider either the sentencing factors in 18 U.S.C. § 3553(a) or any other meritorious sentencing grounds raised by the party.  Accordingly, he has not met his burden on appeal.  *See Cooper*, 437 F.3d at 332.

In sum, we find no merit to any of the issues raised on appeal, and we find no error in Wadley's conviction and sentence.

---

[8]Because Wadley did not object to the disputed instruction, our review is for plain error.  *See United States v. Antico*, 275 F.3d 245, 265 (3d Cir. 2001).  Jury instructions must be evaluated in the context of the overall charge and the entire record of the trial. *See United States v. Park*, 421 U.S. 658, 675 (1975).

[9]A defendant appealing the reasonableness of his sentence has the burden of demonstrating unreasonableness.  *Cooper*, 437 F.3d at 332.